[Civ. No. 3474. First Appellate District, Division Two.—November 4, 1920.]

## A. HARTER, Appellant, v. H. DELNO, Respondent.

[1] CONDITIONAL SALE—DEFAULT—ELECTION OF VENDOR.—Under conditional sale contracts, where an option is retained by the vendor upon default of the vendee either to consider the transaction as a sale, with the right in the vendor to collect the balance of the purchase price, or to stand on the condition that title remains in the vendor and to sue for the property, upon default the vendor must elect, and having elected, is bound thereby.

[2] ID.—LOSS OF RIGHT OF RECOVERY—DELAY.—The vendor's rights to recover the property under a conditional sale contract may be lost by delay or estoppel to assert a right to the property in the hands of an innocent third person.

[3] ID.—CLAIM AND DELIVERY—ESTOPPEL—SUFFICIENCY OF EVIDENCE.—In this action by an assignee of a vendor for the return of an ice-making plant sold under a conditional sale contract, the evidence is held sufficient to support the finding of estoppel.

APPEAL from a judgment of the Superior Court of San Bernardino County. Rex B. Goodcell, Judge. Affirmed.

The facts are stated in the opinion of the court.

---

1. Election of remedies on breach of contract of conditional sale, notes, 1 Ann. Cas. 268; 16 Ann. Cas. 1057; Ann. Cas. 1917D, 464.

Stewart & Stewart for Appellant.

Hert & Watt for Respondent.

BRITTAIN, J.—The plaintiff appeals from a judgment against him in a suit brought for the return of certain property or for its value.

The plaintiff-appellant is the assignee of Frick Company, a Pennsylvania corporation, manufacturers of ice-making and other machinery. For many years it maintained an agent named Meltzer in Los Angeles. Horstmann & Plomert, partners, engaged in the contracting business, or, at, least, in the business of installing ice plants, in Los Angeles, were negotiating with the respondent Delno for the installation of an ice plant on property owned by him in Colton, in San Bernardino County. He wanted the Frick machinery. Meltzer, the Frick agent, was present during the negotiations between Horstmann & Plomert on the one side and Delno on the other, but was not present when the contract between them was executed. Under this contract Horstmann & Plomert undertook to furnish to Delno an ice-making and cold-storage plant, specifying a refrigerating machine made by the Frick Company. They agreed to deliver a machine and apparatus f. o. b. Waynesboro, Pennsylvania, and Los Angeles, respectively, about May 31 and May 28, 1916, respectively. Delno agreed to pay $17,252, $1,500 on the signing of the contract, twenty-five per cent less $1,500 when the machinery and apparatus should be ready for shipment, twenty-five per cent when the plant was ready for charge and test run, and the last twenty-five per cent within forty-five days thereafter. Ten thousand dollars of the purchase price was to be placed in escrow immediately with a Los Angeles bank, for disbursement in accordance with escrow instructions. The title to the machinery and apparatus was to remain in Horstmann & Plomert until all payments should be made. It was agreed that the machinery should not become a part of any real estate on which it was to be located or attached before settlement; title not to pass from Horstmann & Plomert until all cash and securities contracted for should be given, and on default of any payment the whole of the unpaid indebtedness should, at the option

of Horstmann & Plomert, become due and demandable. The purchaser agreed that Horstmann & Plomert should have the right to file mechanics' liens for labor and material. The contract was dated April 15, 1916.

On or about April 19, 1916, Horstmann & Plomert told Meltzer they had contracted with Delno to furnish him machinery for his plant, and he thereupon, for Frick Company, entered into the contract upon which this suit is based. It bore date April 19, 1916. It was on a form supplied by Frick Company to its agents. Under the head "specifications" at the first part of the form was a proposal on the part of Frick Company to Horstmann & Plomert to furnish one refrigerating machine with condensers and other details in accordance with the specifications. They called for a steam engine, gas-compression pumps, shafting, ammonia gauges, ammonia condenser, receiver and oil separator, compression system, traveling crane, accumulator, mercury wells, and other parts, evidently to be built in a complete refrigerating plant. The purchaser was required to furnish and erect all foundation work, masonry, and carpentry work. The last provision of the specifications was that the purchaser, from the time of its arrival, should keep the machinery and apparatus insured against fire *for an amount equal to the unpaid portion of the purchase price,* with loss payable to the Frick Company as its interest appeared. Following these specifications under the word "Miscellaneous" was the contract proper in which Frick Company agreed to furnish Horstmann & Plomert "for use in the ice plant of H. Delno, situated in the city of Colton, county of San Bernardino," one refrigerating machine, together with the apparatus mentioned and described in the attached proposal and specifications and in accordance therewith, they being made a part of the agreement. The contract continued "the land upon which said machine and apparatus are to be erected is described as follows": then follows a description of five lots by block and number and of the entire tract by metes and bounds in the city of Colton, the entire tract having a frontage on the Southern Pacific Company's right of way of 161.3 feet and on H Street of 69.8 feet, with a depth between H Street and an alley of 150 feet, its frontage on the alley being 128½ feet. Frick Company was to deliver f. o. b. Waynesboro fifty days from the date of receipt of

order; the price was $3,373, payable twenty-five per cent with bill of lading, equal payments on July 10, August 10, and September 25, 1916. After provisions immaterial to the present controversy, the contract continued: "Settlement to be fully completed on arrival of machinery. All payments not due at time of settlement to be evidenced by negotiable notes bearing interest at 7% per annum, which notes are to be secured in the manner indicated in paragraph '(c)' next below." Paragraphs "(a)" and "(b)" provided respectively for mortgage of the entire plant and mortgage upon machinery alone. Paragraph "(c)" reads: "The title to machinery and apparatus remaining in Frick Company until all obligations given to it in settlement for same have been paid in cash." There was a stipulation that the machinery should not become a part of the real estate on which it was erected or to which it might be attached before settlement and "the title to the machinery herein ordered is not to pass from Frick Company until all the cash and securities contracted for are given, and in case of failure or refusal to make any of the payments when due, or to make settlement as hereinbefore agreed, or to pay any note that may be given when it falls due, the whole of the unpaid indebtedness arising under this agreement shall thereby, at the option of Frick Company, become immediately due and payable." The contract by its terms is required to be approved by Frick Company at its home office, and was so approved April 25, 1916.

Delno recorded in San Bernardino County his contract with Horstmann & Plomert, and upon completion of their work on October 19, 1916, he filed with the recorder a notice of completion of the work. According to the notarial certificate the notice was acknowledged instead of being sworn to. No claim is made by Delno that the notice was sufficient to start time running as against mechanics' liens, but in this case there is no question of such liens. It is claimed that the recordation of the Delno contract and notice was sufficient to charge Frick Company with notice of the facts that the machinery was being installed on his property in such a manner as to cause it to become a part of the realty, and that he was dealing with Horstmann & Plomert upon the assumption that they were the owners of the property and could pass title. He held his final payment, amounting to

something over $4,000, for thirty-three or thirty-five days after the notice of completion and then paid Horstmann & Plomert. The last payment became due from Horstmann & Plomert to Frick Company nearly one month before the notice of completion was filed, so that for a period of nearly sixty days Delno had in his hands more than enough to have paid the entire cost of the machinery sold by Frick Company to Horstmann & Plomert. During the installation of the plant Delno dealt with Meltzer, and at no time did Meltzer or the Frick Company inform Delno, on whose property they were contracting for the erection of the machinery, that they made any claim of title to the machinery or against him. Being interrogated in regard to this matter by the court, Mr. Meltzer stated that he followed the instructions of Frick Company. He said that he was not to interfere in the sale, notwithstanding his knowledge that the buyer from Horstmann & Plomert understood they were the owners. Being further interrogated he stated that he understood he was not to volunteer any information, but that if anybody had asked him he "would probably" answer exactly how the case was, leaving out the price. The attention of Delno to the claim of Frick Company was first called on February 25, 1917, by a letter from Meltzer, stating that he had received from the Frick Company home office a telegram reading as follows: "Horstmann Plomert ignore balance their Delno account credit department interest on payment investigate please wire." In his letter he said he was writing simply to let Delno know that Horstmann & Plomert still owed Frick Company a balance which was due quite some time ago, and "I believe, if I remember correctly, Frick Co. held title to the machinery bought from Frick Co. until fully paid for in cash. I would be pleased to hear from you what can be done with regard to this matter, thinking that in case you should have to make some other payments to them you would kindly hold off doing so until I have fully reported to our home office." The next that Delno heard from anyone concerning the Frick Company's claim was through a letter dated October 10, 1917, from Stewart & Stewart, as attorneys of Frick Company, with reference to a balance of $873.16, and interest on the same from August 15, 1916, $70.47, making a total of $943.63 "yet unpaid on the ice machinery installed at your place by Horstmann & Plomert."

Paragraph "(c)" of the Frick Company contract is quoted, and the substance of the provision in regard to title remaining in Frick Company is given, including the statement that in the event of default, the whole of the unpaid indebtedness arising under the agreement should at the option of Frick Company become immediately due and demandable. The letter closed with the statement "Frick Company will be loathe to make unnecessary trouble or expense, but must insist upon early payment." The evidence showed that by installation, the machinery and apparatus became integral parts of Delno's building.

The trial court made findings substantially in accordance with the foregoing statement of facts, and that the Frick Company, in failing to assert its rights in said personal property, acted in negligent disregard of the defendant's rights, and by its dealings with regard to the property and with Horstmann & Plomert actually induced a belief in defendant's mind that Horstmann & Plomert were the owners of the legal title of the property, and concluded as a matter of law that the plaintiff, as the assignee of Frick Company, should be estopped from asserting any right, title, or interest in or to the property; that the defendant is the owner and entitled to a decree quieting his title and to judgment against the plaintiff for costs.

The appellant claims that the contract between Frick Company and Horstmann & Plomert was the ordinary conditional sale contract under which Frick Company retained title; that Horstmann & Plomert could give no better title than they acquired, and that Frick Company had the right to the property in the hands of Delno or its value. In this state conditional sales are recognized to the fullest extent, and even *bona fide* purchasers from persons to whom property is delivered under conditional sales get no valid claim to the property. (*Van Allen* v. *Francis,* 123 Cal. 474–477, [56 Pac. 339]; *Kellogg* v. *Burr,* 126 Cal. 38, [58 Pac. 306]; *Lundy Furniture Co.* v. *White,* 128 Cal. 170, [79 Am. St. Rep. 41, 60 Pac. 759].) Contracts are to be interpreted not upon any single clause, however, but the intent of the parties is to be ascertained from the whole document. If upon the entire contract it appears there was a valid sale and credit given, regardless of any language which may have been used by which the vendor seeks to retain title until payment of

the debt, the contract will be considered as one of sale and the provision in regard to title as one inserted for the purpose of security only. (*Palmer* v. *Howard,* 72 Cal. 293, [1 Am. St. Rep. 60, 13 Pac. 858].) In that case it was said "the intention must be taken to have been to transfer the ownership of the property, reserving a security for the price, and nothing more. The possession was delivered; the promise to pay was absolute." In the present case it will be noted that the insurance required was for an amount equal to the unpaid portion of the purchase price, not for the entire value of the property. There was no provision in the contract for the forfeiture of partial payments as rental for the use of the property, such as is customary in conditional sale contracts. "Settlement" was to be fully completed on arrival of the machinery, and negotiable notes were to be given at that time for payments not due. The stipulations of paragraph "(c)" that title should remain in Frick Company until all obligations given to it "in settlement for same" had been paid in cash show an intent to hold the property as security for the payment of the promissory notes given in settlement. If settlement was made, sale was completed, and if Frick Company desired to hold the machinery as security for the notes, it might have accomplished this object under paragraph "(a)" or paragraph "(b)" which provided for mortgages, and the recordation of such mortgages would have advised Delno, who was admittedly an innocent purchaser, of the claims of Frick Company. The provision for settlement implied a completed sale when settlement should be made. The language was that of the plaintiff's assignor. If it was ambiguous, it is to be construed most strongly in favor of the other party and one claiming title under it.

[1] It is fundamental that under conditional sale contracts, where an option is retained by the vendor upon default of the vendee either to consider the transaction as a sale, with the right in the vendor to collect the balance of the purchase price, or to stand on the condition that title remains in the vendor and to sue for the property, upon default the vendor must elect, and having elected, is bound thereby. [2] The vendor's right to recover the property may be lost by delay or by his estoppel to assert a right to the property in the hands of innocent third parties. In the

present case the contract provided that failure to make settlement on delivery of the machinery by giving negotiable notes for deferred payments, or to pay any note when it should fall due, the whole of the unpaid indebtedness arising under the agreement should thereby at the option of Frick Company become immediately due and demandable. If it be assumed that settlement was made on the delivery of the machinery, the sale was complete and title passed to Horstmann & Plomert, from whom it was acquired by Delno. If settlement was not then made, Frick Company had the option immediately to declare the entire debt due. The contract called for the last payment from Horstmann & Plomert to be made on September 25, 1916. It was not made. If Frick Company at the time had promptly exercised its right of election to collect the balance of the debt, it might have given the notice to Delno, which it subsequently did give, in ample time to have enabled Delno to protect the Frick Company from the amount he still owed Horstmann & Plomert. By failing to act promptly and to advise Delno of its rights and election, it permitted him to change his position in relation to Horstmann & Plomert, and it would be a fraud on him to permit the plaintiff, whose assignor slept on its rights, to require him to pay even the debt of $900, and most inequitable to require him to pay the full value of the property.

Before the assignment to the plaintiff, Frick Company, through its agent, Meltzer, in February, 1917, five months after the default, advised Delno that it was seeking to collect the balance of the debt. Again, in October, 1917, more than a year after the default, through its attorneys, it advised him they were seeking to collect the balance of the debt. It exercised its right of election upon default, and in seeking to collect from Delno the balance of the Horstmann & Plomert debt it treated the transaction as a sale. Having made its election, it is bound by it. The fact that after default it sought to collect the balance strongly tends to show that the contract should be construed as indicated herein, and that the provisions of the contract in regard to the retention of title were inserted to evade the provisions of law requiring the recordation of chattel mortgages. [3] The conclusion of estoppel from the findings was correct, and the findings showing the laches and estoppel were supported by

the evidence. It further appears upon the entire record that no injustice has been done by the judgment. The substantial rights of the parties being thus determined, it becomes unnecessary to consider the minor contentions of the appellant.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.