[Civ. No. 4110.   Second Appellate District, Division Two.—December 17, 1925.]

## D. F. BICE, Respondent, v. HAROLD L. ARNOLD, INCORPORATED, et al., Appellants.

[1] CONTRACTS—DISTINCTION BETWEEN CHATTEL MORTGAGES AND CONDITIONAL SALES CONTRACTS—PASSING OF TITLE—RESERVATION OF TITLE.—The vital distinction between contracts in the nature of chattel mortgages or leases and conditional sales contracts is that the former pass title to the vendee, whereas in conditional sales

---

1. See 22 Cal. Jur. 1097; 24 R. C. L. 446, 449.

the title is expressly reserved, with absolute forfeiture of the right to possession upon a breach of any condition specified in the contract.

[2] SALES—CONDITIONAL SALES — INNOCENT PURCHASER—TITLE.—The vendee under a conditional sale of personal property, until the conditions are performed, has no interest in the property which he can transfer, as against the vendor, even to an innocent purchaser, for value, and he cannot divest the conditional vendor of his interest by any act or omission to act not authorized by such vendor.

[3] ID.—TITLE—RIGHT OF CONDITIONAL VENDOR—POSSESSION BY VENDEE.—The right of the conditional vendor upon a conditional sale contract is not a mere lien, but he retains title, while the conditional vendee receives only a forfeitable right of possession until he has performed the conditions required as precedent to its passing, which is usually the payment of the purchase price.

[4] ID. — NATURE OF CONDITIONAL SALE CONTRACT — DISPOSITION OF PROPERTY BY CONDITIONAL VENDEE — EMBEZZLEMENT. — Strictly speaking, a conditional sale contract is not a sale of any kind, but only an agreement to sell and the conditional vendee gets nothing more than a conditional right of possession, and if he attempts to dispose of the property by executing a bill of sale to another, he is guilty of embezzlement under section 504a of the Penal Code.

[5] ID.—SECURITY RETAINED BY VENDOR—ABSOLUTE PROMISE TO PAY—NOTES EVIDENCING PAYMENTS TO BE MADE—EFFECT ON CONTRACT. The security retained by the seller in a conditional sale contract is not a lien, but is a reservation of title, and the transaction is not less an agreement to sell upon condition because the promise to pay the purchase price is absolute, or is evidenced by a note of the conditional vendee, if it is not given in payment.

[6] ID.—CONDITIONAL SALE OF AUTOMOBILE—SALE TO THIRD PARTY WITHOUT KNOWLEDGE OF CONDITIONAL VENDOR—RIGHT OF POSSESSION—CLAIM AND DELIVERY—EVIDENCE.—Where the purchaser of an automobile under a conditional sale contract surreptitiously removed it from the state where the contract is entered into and without the knowledge or consent of the conditional vendor sells it to a third party in this state, the conditional vendor has the right to reclaim it from such third party, even though the latter be an innocent purchaser for value, where the agents of the conditional vendor, with whom he entrusted the responsibility for collection, and, later, recovery of the automobile, exercised every

---

2. See 22 Cal. Jur. 1116; 24 R. C. L. 454.
3. See 22 Cal. Jur. 1098; 24 R. C. L. 476.
4. See 10 Cal. Jur. 241.
5. See 22 Cal. Jur. 1117.

known available means to assert his rights and to enforce the terms of the contract, and where no appreciable degree of negligence is attributable to either of them.

[7] Id.—Sale by Conditional Vendee—Innocent Purchaser—Certificate of Registration.—In such action, the purchaser of the automobile from the conditional vendee was not protected as an innocent purchaser by the failure of the conditional vendor to place his name upon the registration certificate attached to said automobile as the legal owner, in compliance with the provisions of section 8 of the Motor Vehicle Act, where said vendor did not know that the car would ever be brought into California and where he had expressly forbidden the conditional vendee from taking it from the state where the contract was entered into.

[8] Id.—Apparent Ownership—Possession—Title — Estoppel. — In order that the real owner of personal property may be estopped to assert his title against one who has dealt with the apparent owner on the faith of his apparent ownership of or authority over it, something more is required than mere possession on the part of the apparent owner, since merely entrusting a third person with possession does not constitute holding him out as owner, but the owner must go further and do or omit to do some act of a nature such as to mislead persons as to their true possession of the title and the person alleging estoppel must have acted and parted with value upon the faith of such apparent ownership or authority, so that he will lose if the appearances in which he trusted are not real.

---

(1) 35 Cyc., p. 659, n. 70, 71.   (2) 35 Cyc., p. 680, n. 7.   (3) 35 Cyc., p. 652, n. 45, p. 667, n. 19.   (4) 20 C. J., p. 446, n. 49; 35 Cyc., p. 653, n. 46.   (5) 35 Cyc., p. 653, n. 47, p. 654, n. 49, 50, 51. (6) 35 Cyc., p. 670, n. 34, p. 708, n. 22.   (7) 35 Cyc., p. 709, n. 33 New.   (8) 21 C. J., p. 1178, n. 17, 18, 20, p. 1179, n. 23.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Charles S. Burnell, Judge.   Affirmed.

The facts are stated in the opinion of the court.

C. L. Kilgore for Appellants.

Ford & Bodkin and Jos. J. Herlihy for Respondent.

CRAIG, J.—On June 16, 1920, the respondent and one James A. Gallagher, both residents of the state of Wash-

---

8.   See 10 Cal. Jur. 642.

ington, entered into a contract in writing, at Yakima, in said state, for the purchase by Gallagher of a Hudson automobile, by virtue of which agreement the latter sold to respondent another machine for eight hundred dollars, which amount was credited as initial payment upon the Hudson. Gallagher made no further payments, but soon absconded, and when respondent ultimately located his car it was in the possession of appellant Rider, who claimed to have purchased it from Harold L. Arnold, Incorporated, at Los Angeles, under a conditional sale contract, which, in turn, the Arnold company had transferred to the Pacific Finance Corporation. Respondent thereupon instituted an action against Rider and said corporations for possession of the Hudson car, or its value, and damages; Gallagher was also made a party defendant, but, failing to locate him, the plaintiff dismissed as to him. Judgment was rendered for the plaintiff, and this is an appeal therefrom.

The contract between respondent and Gallagher constitutes the principal grounds of controversy, and we quote the material portions thereof, as follows:

"Studebaker Conditional Sale Contract
"Date          June 16, 1920
"Town—          Yakima
"State or Province—Wash.

"To Dr. D. F. Bice,

"I, the undersigned, purchaser, do hereby acknowledge having this day received from you one Hudson motor car cabriolet model, . . . for which I agree to pay you $1700.00 of which I now pay you $800.00 and agree to pay you $900 as the balance of the purchase price of same, said balance being payable in installments *evidenced* by promissory notes, . . .

" . . . It is agreed that the *title to, ownership in and right of possession of said motor car are vested in you until said indebtedness and all other sums of money payable to you, . . . shall have been fully paid to you* in money, at which time ownership shall pass to me.

"It is further agreed that . . . if any of my indebtedness shall become due and remain unpaid in whole or in part, or *if said motor car is removed or attempted to be removed from the state* in which I now reside, *or to be disposed of* or *if I shall sell* or encumber or shall attempt

to sell or encumber said motor car, or in case of misuse or abuse thereof, or whenever you shall deem the debt insecure, the full amount unpaid hereunder, including any notes given, shall become due and payable forthwith, and you may, without any previous notice or demand, and without legal process, enter any premises where said motor car may be found and *take possession thereof,* after which you may, at your option, make such disposition of said motor car as you shall deem fit, and all payments made by me may be retained by you as liquidated damages for the use of said motor car while in my possession and not as a penalty.   Or said motor car may be sold with or without notice either at public or private sale and the proceeds, less the expense of taking, removing, holding, and selling said motor car, shall be credited upon the amount unpaid hereunder; or without such sale there may be credited upon the amount unpaid the fair market value of said motor car at the time of repossessing same, and *in either event,* in consideration of the use and depreciation of said motor car, I promise and agree to pay the balance forthwith. . . . "

Appellants' first point is that this contract conferred upon respondent no more than a lien upon the Hudson car, and that he was negligent in tracing or taking possession of the machine, after the breach of contract as to payment of installments and removal from the state, as a consequence of which the alleged lien was lost.   They cite authorities in attempting to support this claim, each of which involve contracts in the nature of chattel mortgages or leases, and which for apparent reasons are not in point. In these cases the contracts were given to *secure* the payment of deferred installments, or else they provided that in the event of default the vendor should be obligated to sell the property "rendering to the *borrower* all surplus" of the proceeds of such sale after satisfying his *lien.* [1]  The vital distinction between such instruments and that here under consideration is that they passed title to the vendee, whereas in conditional sales the title is expressly reserved, with absolute forfeiture of the right to possession upon a breach of any condition specified in the contract.   *Palmer* v. *Howard,* 72 Cal. 293 [1 Am. St. Rep. 60, 13 Pac. 858], is illustrative of this distinction,

though relied upon by appellant herein. It was there said: "Palmer and Rey were *bound* to resell the property if they repossessed themselves of it. They could not have kept it as an owner; and only so, but they were bound to resell for the benefit of the St. Clairs. The provision is, that if they retake they shall sell 'to the best advantage, rendering to said borrower all surplus, if any, after paying the price agreed upon and the expenses of removal and sale.' This is not a feature of an executory contract of sale. It is the chief characteristic of a mortgage, and is the very sum and substance of proceedings for foreclosure." (Italics in original.)

And it was further said: "It is settled in this state that even *bona fide* purchasers from the person to whom personal property is delivered under an executory contract of sale get no valid claim to the property. (*Kohler* v. *Hayes,* 41 Cal. 455; *Hegler* v. *Eddy,* 53 Cal. 598.) This is in accordance with the great preponderance of authority elsewhere. (*Harkness* v. *Russell,* 118 U. S. 663 [30 L. Ed. 285, 7 Sup. Ct. Rep. 51, see, also, Rose's U. S. Notes].) The reason is, that in such cases the title to the property does not pass, and the maxim, *Nemo plus juris,* etc., applies."

[2] *Marker* v. *Williams,* 39 Cal. App. 674 [179 Pac. 735], also held: "It is the established law, under our court decisions, that the vendee under a conditional sale of personal property, until the conditions are performed, has no interest in the property which he can transfer, as against the vendor, even to an innocent purchaser, for value. He cannot divest the conditional vendor of his interest by any act or omission to act not authorized by such vendor."

The same rule is announced in the following cases: *Rodgers* v. *Bachman,* 109 Cal. 552 [42 Pac. 448]; *Van Allen* v. *Francis,* 123 Cal. 474 [46 Pac. 339]; *Lundy Furniture Co.* v. *White,* 128 Cal. 179 [79 Am. St. Rep. 41, 60 Pac. 759]; *Harter* v. *Delno,* 49 Cal. App. 729 [194 Pac. 300].

The contract in suit expressly provided that Bice should have any one of three alternatives upon Gallagher's breach of its conditions, to wit, that (1) he might retake the car and retain all amounts previously paid as liquidated damages for its use, (2) sell the car with or without notice

and apply the proceeds as a credit upon any remaining unpaid balance, or (3) allow the fair market price of the car as such credit, without a sale. In neither of these events would Bice be required to pay Gallagher any amount. This agreement expressly provides that the title shall remain in the conditional vendor until the purchase price shall have been paid, with interest. This plain and definite provision is controlling unless by clear and unambiguous language it is elsewhere qualified or set aside.

[3] The right of the conditional vendor upon a conditional sale contract such as that before us is not a mere lien; he retains title, while the conditional vendee receives only a forfeitable right of possession until he has performed the conditions required as precedent to its passing, which is usually the payment of the purchase price. [4] It may not be inappropriate to say here that, strictly speaking, this form of contract is not a sale of any kind, but only an agreement to sell. The conditional vendee gets nothing more than a conditional right of possession. If he attempts to dispose of the property by executing a bill of sale to another, he is guilty of embezzlement. (Pen. Code, sec. 504a.) [5] The security retained by the seller is not a lien, but is a reservation of title. (35 Cyc., p. 653.) The transaction is not less an agreement to sell upon condition because the promise to pay the purchase price is absolute, or is evidenced by a note of the conditional vendee, just so it is not given in payment. (*Van Allen* v. *Francis, supra.*) This meets the contention of appellants that because the conditional vendee has agreed to pay any deficiency resulting in case the owner should repossess himself of, and sell, the car, as provided by the sale contract, the instrument must be construed as a mortgage. Many other authorities to the same effect are cited therein.

[6] But appellants insist that they were innocent purchasers for value, and that respondent, well knowing that his property had been removed to the state of California, did not attempt to recover it for a period of about five months after becoming aware of its presence in California, and six weeks after locating it in this state; further, that respondent enabled Gallagher to perpetrate a fraud upon appellants, in that he failed to require the registration of the car in the name of the legal owner in this state, and

that because of this alleged gross negligence respondent should be estopped to assert his claim upon the car. It should be noted at the outset that although respondent was advised through his agents, the automobile sales company, at Yakima, that the automobile had been transported to San Francisco, yet there is nothing to indicate that he at any time knew how to locate it. Gallagher surreptitiously left the state of Washington with the machine, without any mention of such intent, but on arrival in this state he opened correspondence with the sales company, and repeatedly wrote them, promising "from day to day and from week to week" that he would make payments required by his contract, and offering various excuses for having failed in the past to do so; each time he wrote he intimated that he had been in different parts of the state of California. When it became apparent that Gallagher was not acting in good faith, the sales company wired him at his last-known address in San Francisco that he must make a payment of at least three hundred dollars by return mail, or the car would be taken up, and inquiry was then made as to its whereabouts. After some delay they received a telegram from Gallagher, stating that he had been away, and that upon his return he found two telegrams from them; he assured them that he was not attempting to avoid payment, and that he would soon remit or return the car. Soon thereafter it was learned that he had checked out of his hotel at San Francisco, and search was immediately instituted by all the means available to respondent to locate both Gallagher and the machine. The car had been insured against loss by theft, transportation, embezzlement, pilferage, fire, robbery, and contract sale; the sale contract by which respondent retained title had been duly filed with the county recorder in accordance with the laws of Washington, and the insurance policy bore a record of said contract and of the legal ownership of the Hudson car. The sales company at Yakima, the prosecuting attorney, and the insurance company were enlisted in the search; an attorney at San Francisco and a detective agency, as well as the police of both states, were also employed to assist in locating the machine and its missing driver, and the motor vehicle department of California, who were also notified, finally located the car at

Los Angeles, where it developed that Gallagher had sold it to appellant Harold L. Arnold, Incorporated, who, in turn, had transferred it to appellant Rider, under a conditional sale contract.

From the foregoing facts it is apparent that respondent's agents with whom he entrusted the responsibility for collection, and, later, recovery of the property, exercised every known available means to assert his rights and to enforce the terms of the contract, and that no appreciable degree of negligence could be held to have been attributed to either of them. As we have heretofore stated, respondent was the owner of more than a mere lien on the property—he retained the absolute title, the automobile was his property, and his contract constituted a valid conditional sale. Had Gallagher stolen respondent's machine in Washington and transported it to California, it could not successfully be contended that the latter would be precluded by any failure to locate it from reclaiming the same upon discovery; and having complied with all legal requirements of the state of Washington in protecting his title to the car, he is in no different or less advantageous position.

[7] But it is asserted by appellants that the Arnold company should be protected as an innocent purchaser, because, it is claimed, the respondent failed and neglected to place his name upon the certificate attached to the Hudson car as legal owner, in compliance with the provisions of section 8 of the California Motor Vehicle Act of 1915, page 402, as amended by Stats. 1919, page 199. We fail to understand how Bice can be held accountable for an omission or fault in an instrument of whose existence he not only had no knowledge, but had every reason to suppose would never be executed as long as his title to the property in question lasted. He did not know that the car would ever be brought into California; in fact, he had expressly forbidden Gallagher from taking it from the state of Washington, and hence under no circumstances could he be expected to perform a duty imposed only by the laws of this state. Of course, he had nothing to do with the securing of the certificate here, or with any omission therefrom. It is true that for about six weeks before he took steps to secure possession of the car, Bice was apprised of the fact that Gallagher claimed to be living

at the Stewart Hotel in San Francisco, but knowing of Gallagher's hotel address is quite a different thing from information as to the whereabouts of the Hudson machine. Besides, it cannot be said as a matter of law that the mere fact having been known to Bice that the car was in California was notice to him that it was being operated on the highways, and if not so operated it did not require a license, In the absence of definite information respondent might reasonably infer that should Gallagher secure a license he would comply with the law and fill in the blanks properly and truthfully. On the other hand, for aught Bice knew, the Hudson was in storage or at a repair-shop.

In each of the cases cited by appellants some act of the owner who was held to have been estopped in some way participated in the deception of the estoppel asserter. [8] "In order that the real owner of personal property may be estopped to assert his title against one who has dealt with the apparent owner on the faith of his apparent ownership of or authority over it, something more is required than mere possession on the part of the apparent owner since merely entrusting a third person with possession does not constitute holding him out as owner. The owner must go further and do or omit to do some act of a nature such as to mislead persons as to their true possession of the title. The person alleging estoppel must have acted and parted with value upon the faith of such apparent ownership or authority so that he will be the loser if the appearances to which he trusted are not real." (21 C. J., pp. 1178, 1179.) Mere possession of the Hudson car by Gallagher constituted no *indicia* of ownership. That possession was not profitably affected by way of making out an apparent title in him by his having a certificate without the name of the legal owner stated therein, and with an utter absence of the customary bill of sale from Gallagher's alleged vendor. Nothing which Bice did or omitted to do could have deceived the Arnold Company had they used ordinary care to inquire into Gallagher's title before purchasing the car from him. Considering the law heretofore stated regarding the futility of attempting to alienate the owner's title by the conditional vendee, and in view of the prevalence of interstate transportation of stolen automobiles, we do not think that appellant

Arnold Company displayed that degree of vigilance that would warrant it in charging negligence against one who had legally retained and protected his title to the property, and sought by every available means to locate and reclaim it, as did respondent.

As we have shown above, Gallagher agreed in writing with respondent that the automobile should not be removed from the state of Washington; soon thereafter he absconded with the machine, and it appears that he was apprehended by an inspector of the motor vehicle department, who required that he register the vehicle as a nonresident. Gallagher thereupon obtained a license in his own name as "registered owner," but no mention was made to the department, or appeared on the application or license, of the name of the legal owner. It was testified that the Arnold Company "would assume" from the license that the registered owner was the legal owner. However, it appears that when said company negotiated the trade with Gallagher he stated that he had exchanged a carload of oil for the Hudson car in Washington, but when asked if he had a bill of sale he frankly replied that he had none; no further inquiry was made as to the name of the person from whom he acquired the machine; nor did the Arnold Company attempt to ascertain whether or not Gallagher was then in fact its legal owner.

In *Parke* v. *Franciscus,* 194 Cal. 284 [228 Pac. 435], it was held that the claimant was estopped to recover possession of an automobile which his conditional vendee had transferred to an innocent purchaser. It there appeared that one McNabb delivered to Green the possession of a Buick automobile, under a conditional sale contract, and retained the registration certificate; Green thereafter sold the machine to Franciscus, and McNabb sold and assigned his contract to Parke and Brown, but did not give them a bill of sale, nor the registration certificate; Green and an agent of McNabb caused the car to be reregistered in the name of Franciscus, who thereafter received a certificate from the motor vehicle department, with no knowledge that Parke and Brown claimed any interest in the Buick. Failing to collect on said contract, the latter instituted a claim and delivery action against Franciscus, who answered, alleging

that he was an innocent third-party purchaser, for value, and that the plaintiffs had conferred upon McNabb and Green apparent title and power of sale, and that therefore they were estopped from asserting title or right of possession as against the defendant, Franciscus. In affirming judgment for the defendant, the supreme court quoted section 8' of the Motor Vehicle Act of 1919 (p. 191), and then said:

"The nature of the motor vehicle traffic requires that there be a more certain *indicia* of ownership than mere possession for the protection of the general public in case of accidents or violations of the law and to prevent fraud upon innocent purchasers. In order to effectuate this purpose registration and identification of motor vehicles is required. The 'legal owner' and the 'registered owner' upon the face of the certificate identify the vehicle. Upon the sale and transfer of 'ownership' in a vehicle already registered the act requires the transferor and transferee to enter into a joint statement of the transfer endorsed upon the reverse side of the certificate of registration. It is also provided that the *legal owner* sign such statement which shall be forwarded to the department and upon the payment of a fee the vehicle shall be registered in the name of the transferee. . . .

"Therefore, the failure of appellants to obtain the certificate of registration properly endorsed by themselves and McNabb and to forward it together with an application for re-registration to the department within ten days renders their title invalid as against the respondent. . . .

" . . . There is no authority in this jurisdiction on the point whether a claimant in an action for claim and delivery must show compliance with the provisions of the Motor Vehicle Act. The cases in which the section is involved assume that the effect of the provision is to preclude the passage of title, but refuse to allow it to be invoked where the facts justify the application of estoppel. (*Boles* v. *Stiles*, 188 Cal. 304 [204 Pac. 848]; *Chucovich* v. *San Francisco Securities Corp.*, 60 Cal. App. 700 [214 Pac. 263].) . . .

" . . . It is well settled that negligence, that is, careless and culpable conduct is as matter of law equivalent to an intent to receive and will satisfy the element of fraud neces-

sary to an estoppel. (*Venice* v. *Short Line Land Co.,* 180 Cal. 447 [181 Pac. 658].) Of course, *the neglect to operate as an estoppel must be in respect to some duty owing to the party asserting it.*" (Italics ours.)

In the case at bar, there was nothing in the nature of a bill of sale to Gallagher, or signature of the legal owner upon the certificate which he held; nor did he sign as legal owner the certificate by means of which the machine was re-registered to Arnold; the sole *indicia* of ownership possessed by Gallagher or transferred by him, was his nonresident certificate as "registered owner," to which respondent was a stranger. At that time the act required that: "Upon a transfer of the title or interest of a *legal owner* or owners in or to a vehicle registered under the provisions of this act as hereinbefore required, the person or persons whose *title* or interest is to be transferred and the transferee shall write their signatures with pen and ink upon the certificate of ownership issued for such vehicle, together with the address of the transferee, in the appropriate spaces provided upon the reverse of said certificate."

It was held in *Parke* v. *Franciscus, supra,* that the requirements of the act last quoted amounted to more than safeguards to the people at large, and that they must be observed, else the transfer of title is incomplete. But the only title or interest in the Hudson car which could be conveyed was in Bice, since Gallagher had but the possession, the right to which he had forfeited by his own fraud and flight. It should at once have become apparent to the Arnold Company that the space provided for signature of the legal owner was blank, yet even the admission of Gallagher that he had no bill of sale did not prompt them to seek the source of his asserted interest in the property. Hence, Arnold, and in turn the Pacific Finance Corporation, as did Parke and Brown in the cited case, purchased and received merely a valueless form of conditional sale contract. And this, too, while Bice was in diligent search of his car, which refutes any contention that his "neglect" operated to estop him from claiming the machine through any duty that he owed appellants. Rider therefore acquired no interest from Arnold, since Gallagher, who had defaulted to Bice, could convey no interest to Arnold.

We conclude that the judgment appealed from should be affirmed, and it is so ordered.

Finlayson, P. J., and Works, J., concurred.