[Civ. No. 24993.    Second Dist., Div. Three.    Nov. 10, 1961.]

GENERAL MOTORS ACCEPTANCE CORPORATION (a Corporation), Respondent, v. ROSS S. GILBERT, Appellant.

734

Greenwald, Holland, Landrum & Baim and Lee W. Landrum for Appellant.

Ball, Hunt & Hart and Clark Heggeness for Respondent.

VALLÉE, J. — Appeal by defendant from an adverse judgment in a suit to quiet title to an automobile.

On September 2, 1955, a Friday, Murray Desmond purchased a new 1955 Oldsmobile from C. Standlee Martin, an automobile dealer in Long Beach, California, under a conditional sale contract. The contract recited the cash price as $4,534.56 and "TOTAL DOWN PAYMENT . . . Consisting of $700.00 Cash, $861.56 AUTH. DISC. . . . $1561.56 . . . REMAINDER . . . $2973.00." The contract called for monthly payments, payable at an office of General Motors Acceptance Corporation, called G.M.A.C., and reserved title in the seller until all payments were made. It prohibited Desmond, without express permission of Martin or his assignee, from taking the automobile out of California and from transferring or otherwise disposing of any interest in the contract or the automobile. The contract on its face bore an assignment from Martin to G.M.A.C. Paul Dewitt, Martin's sales manager, delivered the automobile to Desmond, made out a report of the sale which Desmond signed, placed paper license plates and a blue registration slip on the automobile, and gave a warranty book, a book of instructions, and the keys to Des-

mond. He also gave Desmond a copy of the conditional sale contract and received $400 cash from Desmond.

The dealer's report of sale was filed with the Department of Motor Vehicles on September 6, 1955, the day after Labor Day. The report showed G.M.A.C., 3977 Atlantic Boulevard, Long Beach, as the legal owner, and Desmond as the registered owner of the automobile.

On September 6 Thomas Weems, credit manager of Martin, investigated the credit of Desmond and found he had given an address of a motel and that the operators of the motel had never heard of Desmond. Desmond had listed the Old Dominion Bank in Arlington, Virginia, on his customer's statement. Weems called Arlington, Virginia, learned Desmond had been employed there for some time and received "a very bad report on him." He also found Desmond had misrepresented his financial status and employment record. Weems sent this information with a report of the sale to G.M.A.C. on September 6. Weems testified: "Q. With reference to the assignment of the contract to GMAC, that was done on Tuesday morning, the 6th; is that right? A. Yes."

On September 19 the department issued a vehicle registration and a certificate of ownership showing G.M.A.C. as the legal owner and Desmond as the registered owner of the automobile. The lapse between the filing of the report of sale, September 6, and the issuance of the registration, September 19, was because it takes about 10 to 12 working days for the department to process a report of sale and issue a registration and certificate.

On September 21 Martin reported the matter to the Long Beach Police Department. After investigation the police reported to Martin that Desmond's true name was Berman, he had several aliases, the F.B.I. had a "Dyer Act" warrant for him, and he could not be located. On October 6 G.M.A.C., with knowledge of these facts, paid Martin for his interest in the conditional sale contract.

Meanwhile Desmond drove the automobile to Mississippi. On September 9 he obtained a State of Mississippi license tag showing the owner of the car as Murray Desmond and a "Road and Bridge Privilege Tax" receipt. Mississippi is a "Non-title State"; it does not issue a certificate of ownership. On September 23 he filed with the State of Kansas an application for a certificate of title showing the car to be free of liens.

In the application he represented he was the sole owner of the car and his title was not subject to any lien. A certificate of title was issued to that effect on October 20, 1955.

On November 18, 1955, without having made any payment on the conditional sale contract, Desmond sold the automobile to defendant Gilbert, doing business as Whiz Kids, an automobile dealer in Culver City, California. At that time the car had a 1955 Kansas license plate on it. Desmond presented to Gilbert the registration of title to the automobile from the State of Kansas showing the legal and equitable title in Desmond, free and clear of any liens. Defendant telephoned the Kansas Department of Motor Vehicles and was told "title was valid and clear." Defendant also checked with the California Department of Motor Vehicles for an inspection of the motor number as against the number as it appeared on the certificate of title for the purpose of ascertaining whether the car was listed as having been stolen. The numbers checked and the car was not so listed. Defendant also received from Desmond a bill of sale, a caravan statement on a form issued by the California Department of Motor Vehicles, a power of attorney, and all the documents necessary to transfer title in California from Desmond to defendant. Defendant then gave Desmond a check for $2,450, which he cashed.

On November 20 defendant sold the automobile to J. M. Khatter for $3,500 under a conditional sale contract, which contract was sold to Pacific Finance Company the following business day. On December 9 Gilbert reported to the California Department of Motor Vehicles his purchase of the automobile from Desmond and its sale to Khatter and requested a California registration and certificate of title. On December 23 Pacific Finance received a pink slip from the California department designating it as the legal owner and Khatter as the registered owner.

In March 1956 the F.B.I. apprehended Desmond on the Dyer Act warrant and learned he had sold the automobile to Gilbert and that Gilbert had sold it to Khatter. On being advised of these facts, G.M.A.C. in April 1956 repossessed the automobile and sold it to one Barrow.

When G.M.A.C. reported the sale to Barrow to the California Department of Motor Vehicles, the department discovered it had issued two certificates of title on the automobile. It notified G.M.A.C. it would not honor its title or issue a new

certificate until the issue of title between G.M.A.C., Gilbert, Khatter, and Pacific Finance had been adjudicated. This suit followed. Khatter and Pacific Finance filed disclaimers. Gilbert filed a cross-complaint for damages on the theory he was a good-faith purchaser from Desmond. On May 15, 1956 Gilbert paid Khatter $450 for any right he might have arising out of his purchase and paid Pacific Finance $2,259.19. Judgment was for G.M.A.C. on the complaint and on the cross-complaint. Gilbert appeals from the judgment. He also appeals from the nonappealable order denying a new trial. That appeal will be dismissed.

Defendant's first contention appears to be that G.M.A.C. never acquired title to the automobile. The argument in support of the contention is not clear. As we understand it. defendant asserts the conditional sale contract executed by Martin and Desmond on September 2, 1955, was void for failure to comply with Civil Code, section 2982, because it recited the receipt by Martin of $700 cash, whereas Desmond paid only $400. He further asserts: G.M.A.C. was not the owner even though it was so designated in the certificate of title; since G.M.A.C. did not accept the contract until October 6, 1955 it could not have been the owner on September 6 when the report of sale was made or September 19 when the certificate of ownership was issued showing G.M.A.C. as the legal owner; and therefore the automobile was validly registered to Desmond in Mississippi and in Kansas before G.M.A.C. accepted title. The contention and argument are fallacious.

Civil Code, section 2982, at the time in question provided in subdivision (a) that every conditional sale contract for the sale of a motor vehicle shall be in writing, contain all of the agreements between the parties, be signed by the buyer and by the seller, and recite:

"1. The cash price of the personal property described in the conditional sale contract.

"2. The amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property. . . .

"3. The amount unpaid on the cash price, which is the difference between Items 1 and 2."

■ The requirements of the provisions of section 2982 we have quoted are said in *General Motors Accept. Corp.* v. *Kyle,* 54 Cal.2d 101 [4 Cal.Rptr. 496, 351 P.2d 768], to be formal requirements. ■ The court in that case stated (p. 105):

"As we said when we first considered subdivision (a) of the section in *Carter* v. *Seaboard Finance Co.* (1949), 33 Cal. 2d 564, 573 [203 P.2d 758], its 'obvious purpose' is 'to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost.' As shown by subsequent decisions hereinafter discussed, such subdivision (a) is not intended to penalize the seller who violates it in the respects here concerned, or the assignee of such a seller, nor should such subdivision (a) be applied in a manner which will give a windfall to the conditional purchaser. . . .

■ "[P. 112.] The conditional seller whose violations of section 2982 are only formal can keep the car if he retakes it from the defaulting buyer without aid of a court (*id.* [*Williams* v. *Caruso Enterprises* (1956), 140 Cal.App.2d Supp. 973, 979 [4] (295 P.2d 592)]; see the *Lewis* case (1958), *supra,* pp. 686, 688 of 50 Cal.2d [328 P.2d 968], rejecting without particular discussion the buyer's contention that he should recover the car from the repossessing assignee of a seller whose violations were both formal and substantive). And the seller whose violations are formal only should not be penalized if, instead of repossessing the vehicle by his own action, he seeks the aid of legal process to retake it."

■ The contention that the contract was void for failure to comply with Civil Code, section 2982, cannot be sustained.

■ On the record the trial court could have inferred the assignment to G.M.A.C. was effected on September 6 when Martin reported the sale to it. ■ A constructive delivery of a written document evidencing the right of the assignee with the intention of passing title may be sufficient to pass title. Delivery to the assignee personally is not essential. Constructive delivery may be sufficient. (5 Cal.Jur.2d § 40, p. 316.) ■ As we have noted, the contract provided the monthly payments of the balance of the purchase price were to be made to G.M.A.C. The contract on its face bore an assignment to G.M.A.C. On September 6, the next business day after the sale, Martin reported the sale to G.M.A.C. On these facts it could reasonably be inferred that an arrange-

ment existed between Martin and G.M.A.C. by which the latter regularly purchased Martin's contracts and that there was a constructive delivery and acceptance of the assignment on September 6.

Even assuming, as defendant contends, that the assignment of the conditional sale contract by Martin to G.M.A.C. was not effective until October 6, 1955, the transfer of the contract was perfected on that date. (43 Cal.Jur.2d § 350, p. 476.) In the interim, Martin had legal title. On and after October 6 G.M.A.C. was the legal owner of the automobile. Desmond had no interest which gave him the right to obtain a license tag showing himself as the owner, or to obtain a certificate of title in Kansas. The fact that the contract said $700 had been paid whereas $400 was paid did not give him any such right. He had no right to take the automobile out of the state. In disposing of the automobile by executing a bill of sale to defendant, he was guilty of embezzlement. (Pen. Code, § 504a.) Desmond never had any title he could transfer.

It is well settled that the owner of personal property has the right to enter into an agreement of sale and deliver possession of the property to the buyer on the condition that title is to remain in the seller until the purchase price is paid. The seller's title is then superior to any interest subsequently acquired by a third person from the conditional vendee even though the subsequent buyer acquires his interest in a bona fide manner without knowledge of the original reservation of title. (*Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.*, 54 Cal.2d 773, 777 [8 Cal.Rptr. 448, 356 P.2d 192].)

The vendee under such an agreement, until its conditions are performed, has no interest in the property which he can transfer as against the vendor, even to an innocent purchaser for value. He cannot divest the conditional vendor of his interest by any act or omission to act not authorized by the vendor. The conditional vendor retains title; the conditional vendee receives only a forfeitable right of possession until he has performed the conditions required as precedent to title passing. (*Bice* v. *Harold L. Arnold, Inc.*, 75 Cal.App. 629, 634-635 [243 P. 468]; *Phelps* v. *Loupias*, 97 Cal.App.2d 350, 355-356 [217 P.2d 748].)

Analogous and applicable here is the rule that an out-of-state conditional vendor of an automobile who has complied with the requirements of his own state as to recor-

dation of his conditional sale contract is protected against purchasers of the automobile in this state, where the conditional vendee without authority or knowledge of the conditional vendor, and contrary to the provisions of the contract, removes the automobile to this state and sells it. The reason for this conclusion is that the courts favor a rule which places upon the citizens of this state the duty of exercising a reasonable degree of care and diligence in purchasing property recently brought into the state. (*Mercantile Accept. Co.* v. *Frank,* 203 Cal. 483 [265 P. 190, 57 A.L.R. 696]; 7 Cal.Jur.2d § 443, p. 387.)

■ The court found defendant was not a good faith purchaser for value. It is asserted the finding is unsupported. We think it is supported. In any event, it is obvious from what we have said that the finding is immaterial. However, a bona fide purchaser for value, without notice, of property from a conditional vendee thereof may be permitted to retain the property bought from the conditional vendee on paying the conditional vendor the balance due under the terms of the original contract of sale. (*Goldman* v. *Superior Court,* 124 Cal.App.2d 165, 167-168 [268 P.2d 134].) This rule is applicable if defendant was a bona fide purchaser for value. Defendant did not at any time pay G.M.A.C. the balance due under the terms of the conditional sale contract between Martin and Desmond.

■ Defendant contends G.M.A.C. went into the trial court with "unclean hands" and is estopped to assert the validity of its certificate of ownership. The contention is predicated on the fact that G.M.A.C. paid for the conditional sale contract on October 6, 1955, and at that time it knew that some of the credit information given by Desmond to Martin was false.

The contention that G.M.A.C. went into the trial court with unclean hands is untenable. The court found to the contrary. The assignment to G.M.A.C. transferred all of the right of Martin under the conditional sale contract to G.M.A.C. (Civ. Code, § 1459.) The latter did not go into the trial court with unclean hands merely because it knew at the time it paid the purchase price for the assignment that Desmond had obtained the automobile by false pretenses. The question was one of fact for the trial court. (18 Cal.Jur.2d § 28, p. 181, § 29, p. 185.)

The doctrine of estoppel rests on the theory that the party to be estopped has by his declarations or conduct misled another to his prejudice, so that it would be a fraud on the latter to allow the true state of facts to be proved. (*Martin* v. *Zellerbach*, 38 Cal. 300, 314 [99 Am.Dec. 365].)

In general, four things are essential to the application of the doctrine of equitable estoppel: first, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true state of facts; and fourth, he must rely upon the conduct to his injury. (*Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489, 491 [256 P.2d 32]; *Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.*, 54 Cal.2d 773, 778 [8 Cal.Rptr. 448, 356 P.2d 192].)

The existence of an estoppel is a question of fact. (*Pike* v. *Rhinehart*, 112 Cal.App.2d 530, 533 [246 P.2d 963].) [12b] G.M.A.C. did not in any way participate in the deception of defendant. It did not clothe Desmond with the legal title which induced defendant to buy. It cannot be said that anything stated or done by G.M.A.C. induced defendant to purchase the automobile. *Bice* v. *Harold L. Arnold, Inc.*, 75 Cal.App. 629 [243 P. 468], states (p. 638):

" 'In order that the real owner of the personal property may be estopped to assert his title against one who has dealt with the apparent owner on the faith of his apparent ownership of or authority over it, something more is required than mere possession on the part of the apparent owner since merely entrusting a third person with possession does not constitute holding him out as owner. The owner must go further and do or omit to do some act of a nature such as to mislead persons as to their true possession of the title. . . .' (21 C.J., pp. 1178, 1179.) Mere possession of the Hudson car by Gallagher constituted no *indicia* of ownership. That possession was not profitably affected by way of making out an apparent title in him by his having a certificate without the name of the legal owner stated therein, and with an utter absence of the customary bill of sale from Gallagher's alleged vendor. Nothing which Bice did or omitted to do could have deceived the Arnold Company had they used ordinary care to inquire into Gallagher's title before purchasing the car from him."

So at bar. Nothing G.M.A.C. did or omitted to do could have deceived defendant had he used ordinary care to inquire into Desmond's title before purchasing the car from him.

The appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 9, 1962.