[Civ. No. 7721. First Appellate District, Division Two.—February 20, 1931.]

JULES PERONNET et al., Appellants, v. WILLIAM A. RALPH et al., Defendants; GEORGE R. FRAMPTON, Respondent.

W. W. Butler for Appellants.

Courtney A. Teel for Respondent.

BURROUGHS, J., *pro tem.*—This is an action of claim and delivery. The property involved constitutes all the equipment, furniture and fixtures contained in and pertaining to a certain theater known as the Tujunga Valley Theatre, situate at Tujunga, California, of the stipulated value of $5,000. Judgment was entered in favor of the cross-complainant, George R. Frampton, for the return of said property, or for $5,000, the value thereof. The plaintiffs have appealed from the judgment.

The bill of exceptions show that on April 14, 1924, the plaintiffs Peronnet and the defendants William A. Ralph and Lulu E. Ralph, entered into the following agreement:

"I hereby hand you my check for the sum of $100.00 to apply on the purchase of the base and equipment of the Tujunga Theatre, situate at Tujunga, California. The lease is to be for the term of five years from April, 1924, at a monthly rental of $75.00, same to be straight transferable. The equipment is to be free and clear of all encumbrance except the sum of $2,300.00 due on organ, payable $45.00 per month or more, which I agree to assume. The organ contract is to run for a term of three years.

"The full purchase price is to be $6,500.00, payable as follows: $1,000.00 upon the signing of the lease, and the balance of $5,500.00 to be paid ninety days after the signing of the lease, this sum to be secured by demand note bearing interest at the rate of 7 per cent per annum.

"The above lease is to be secured by the first and last month's rent.

"Possession to be given on or before May 1, 1924. All bills, deposits, rents, taxes, insurance, etc., to be prorated date of delivery.

"The check for $100.00 to apply on purchase price when deal is consummated, otherwise to be returned to me.

" . . .

"I, R. Peronnet, owner of the above *lease* and equipment, hereby accept the above proposition and will deliver the above mentioned lease, and will render a clear bill of sale upon the payment to me of the sum of $6,500.00. Bill of sale not to include the organ. . . .

"It is agreed between the parties hereto that the bill of sale, lease and note are to be escrowed in a reputable bank until the terms of this agreement have been fully performed."

Two days later another agreement was entered into by the same parties as follows:

"Received of W. A. Ralph and L. W. Ralph the sum of one thousand one hundred and fifty ($1,150.00) dollars to apply on the purchase of the Tujunga Valley Theatre equipment and lease situate at Tujunga, California. One thousand dollars ($1,000.00) to apply on the purchase price of $6,500.00, and $150.00 to apply on the first and last month's rent, in accordance with the lease. . . . Possession of the above mentioned theatre is to be given April 24, 1924, and all bills, taxes, insurance, deposits and other expense bills are to be prorated date of delivery.

"R. PERONNET."

In accordance with said agreements the Peronnets leased the theater building to the Ralphs for the term of five years, and the latter were let into possession of the building in accordance with the terms of said lease, and were given possession of all of the personal property. On April 16, 1924, the said lease, together with the following escrow instructions, were delivered to the Tujunga Valley Bank:

"I hand to Mr. Ralph Peronnet, cash paid out of escrow $1,000 a lease of Tujunga Valley Theatre and other papers to be signed and executed by me in connection with this escrow—which you are instructed to use when you can hold for me:

"(1) Covering the following described property:

"Bill of sale of theatre equipment, signed and acknowledged lease by all parties in interest. . . .

"Rent on theatre and equipment (full lease) paid till June 1, 1924, and no refund to be made to seller on same.

"Insurance adjusted out of escrow.

"Taxes adjusted out of escrow.

"One copy of lease goes to Mr. Ralph, and one copy to Mr. Peronnet, and bill of sale to be delivered to Mr. Ralph, all duly executed, upon the payment of that certain promissory note of $5,500.00, which is made and executed by W. A. Ralph and L. E. Ralph, April 16, 1924. Seven percent interest due in 100 days from date.

"I have read the foregoing instructions and understand the contents thereof: I have also read the conditions printed on the back of this form, governing the administration of this escrow, and same are satisfactory to me.

"(Signed) WILLIAM A. RALPH.

"(Signed) LULU E. RALPH.

"The conditions above are hereby approved, and I will hand you a lease and bill of sale executed by Jules Peronnet and Ralph Peronnet in favor of William A. Ralph and Lulu E. Ralph, son and mother, leasing property as above described, which you are authorized to deliver upon payment to you for my account the sum of $6,500, $1,000 already paid outside escrow, and the balance of $5,500 to be by one certain promissory note of $5,500, dated April 16, bearing 7 per cent interest, and due in 100 days from date, within the time as above provided. . . .

"I have read the foregoing instructions and understand the contents thereof; I have also read the conditions printed on the back of this form, governing the administration of this escrow, and same are satisfactory to me.

"(Signed) RALPH PERONNET."

Among the conditions printed on the back of the escrow form is the following: "Bank reserves right to withhold performance in case parties disagree."

The promissory note mentioned in the foregoing escrow instructions was signed by the Ralphs and deposited with the lease and bill of sale as aforesaid. The Ralphs entered into possession of the theater under the terms of said lease and also took over the theater equipment. They failed to make any further payments than those heretofore men-

tioned. On July 24, 1924, the Peronnets gave instructions to the Tujunga Valley Bank that the Ralphs had failed to make any payment of the $5,500 note which was due at the expiration of said 100 days, to wit, July 25, 1924, and that they had asked for and had been granted an extension of time to July 30th, and authorized the bank to accept payment of $2,750 on or before that date, and in event of such payment the time for the balance would be extended three months. On September 17, 1924, no payments having been made by the Ralphs, the Peronnets notified them that the contract of April 16, 1924, had been violated, and it was therefore declared forfeited and demanded that all the property be returned to them. This the Ralphs refused to do. On October 6, 1924, the Ralphs were indebted to the cross-complainant Frampton in the sum of $1500, and after proceedings in accordance with section 3440 of the Civil Code the Ralphs sold all of said property to Frampton for said indebtedness. Frampton thereupon endeavored to take possession of said personal property, but was refused the same by the Peronnets, who had previously obtained possession of the real property in which the personal property was situated, for nonpayment of rent by the Ralphs. Thereafter the Peronnets commenced this action against the Ralphs and Frampton, seeking to recover the possession of said personal property. The defendants Ralph made no defense, but Frampton appeared and filed a cross-complaint, claiming the ownership of said property, and demanded its return to him or the value thereof.

The trial court concluded that under the foregoing facts the transaction constituted a completed sale and that the sale by them to the Ralphs was conditional and that the title to said property did not pass, but remained in them until the payment in cash of the sum of $5,500 still due them.

''The owner of personal property has the right to make an agreement to sell the same and deliver possession thereof to the buyer, upon the condition that the title thereto shall, nevertheless, remain in the seller until the price agreed on has been fully paid, and the title so withheld by the owner will, until full payment, be superior to that of a subsequent mortgagee or purchaser of such personal property from the buyer, even if such subsequent mortgage or purchase was

made without knowledge or notice of the reservation of title and paid full value for the property." (*Oakland Bank of Savings* v. *California Pressed Brick Co.*, 183 Cal. 297 [191 Pac. 524], and cases there cited.)

"The question whether or not a given contract is or is not a contract of conditional sale is to be determined wholly by the intent of the parties, expressed in and deducible from the contract itself. In arriving at the solution of the question, the whole contract is to be considered, and no detached term or condition is to be given prominence or effect over and above another. So that, if the legal effect of the whole contract be to establish a mortgage or a lease or an option to purchase between the parties, the mere negation in another part of the contract of that legal effect will not control. But if, upon the other hand, the intent be clear that title shall not pass until the performance by the vendee of a condition precedent or concurrent, such a contract becomes a conditional sale and not repugnant to any principle of justice or equity, even though possession of the property be given to the opposing purchaser. (*Harkness* v. *Russell*, 118 U. S. 663 [30 L. Ed. 285, 7 Sup. Ct. Rep. 51, see, also, Rose's U. S. Notes] ; *Rodgers* v. *Bachman*, 109 Cal. 552 [42 Pac. 448].)" (*Van Allen* v. *Francis*, 123 Cal. 477 [56 Pac. 339, 340].)

█ In support of their claim that the parties to the transaction intended that the sale was conditional, appellant cites that portion of the language of the acceptance as follows: "I . . . accept the above proposition, and will deliver the above mentioned lease, and will render a clear bill of sale upon the payment to me of the sum of $6,-500.00," and the further language: "It is agreed between the parties hereto that the bill of sale, lease and note are to be escrowed in a reputable bank until the terms of this agreement have been fully performed," and, "One copy of lease goes to Mr. Ralph and one copy to Mr. Peronnet, and bill of sale to be delivered to Mr. Ralph, all duly executed, upon the payment of that certain promissory note of $5,500, which was made and executed by W. A. Ralph and L. E. Ralph on April 16, 1924, 7 per cent interest, due in 100 days from date." And also the language in the contemporary instructions of the seller Peronnet referring to

the lease and bill of sale, "which you are authorized to deliver upon payment to you for my account in the sum of $6,500.00, $1,000.00 already paid out of this outside escrow, and balance of $5,500.00 to be by one certain promissory note of $5,500.00, dated April 16, bearing 7 per cent interest, and due in 100 days from date within the time as above provided."

On the face of the foregoing instruments it appears that the appellants accepted the offer of the Ralphs to purchase the property, and agreed to render a clear bill of sale upon payment to them in the sum of $6,500; that the Ralphs were to execute a promissory note in the sum of $5,500, bearing interest in the sum of seven per cent and due 100 days from its date; that the lease, bill of sale and note were to be put in escrow in a reputable bank until the terms of the agreement had been fully performed, when they were to be delivered to the Ralphs. It is true that in the instructions given by the appellants, but without reference to any other portion of the several agreements the language used would seem to indicate that the balance due on the property sold, after the payment of the $1,000 in cash, should be paid by the promissory note, but as said in *Palmer* v. *Howard*, 72 Cal. 293 [1 Am. St. Rep. 60, 13 Pac. 858], the intention must be collected from the whole transaction and not from any particular feature of it.

It is apparent from reading the several instruments that they were not drawn by a person skilled in the law, and it is a matter of common knowledge that such persons usually believe that to complete a sale, such as the one in the case at bar, a bill of sale is necessary to convey title. However, no good reason has been shown why the documents were put in escrow, except that the sellers would not give "a clear bill of sale" of the property until the purchase price had been paid. Counsel for respondent claims that the documents in escrow were placed there as security for the payment of the sum due on the note, but he has not pointed out in what way they would amount to any security. We are satisfied from the record that the sale was a conditional one and that title did not vest in the Ralphs, but remained in appellants. At most, all that the respondent could have

obtained by his purchase from the Ralphs was whatever equity, if any, the Ralphs had in the property.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 21, 1931, and a petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1931.