[L. A. No. 25656. In Bank. Oct. 31, 1960.]

CRESTLINE MOBILE HOMES MANUFACTURING COMPANY, INC. (a Corporation), Appellant, v. PACIFIC FINANCE CORPORATION (a Corporation), Respondent.

Austin, Austin, Jones & Chaffee and Wallace A. Pinnick for Appellant.

Frederick T. Mason for Respondent.

James C. Sheppard, George R. Richter, Jr., Gordon F. Hampton and Merrill R. Francis as Amici Curiae on behalf of Respondent.

PETERS, J.—This claim and delivery action was brought by Crestline Mobile Homes Manufacturing Company, the unpaid seller of a trailer, against Pacific Finance Corporation, the holder of a trust receipt on the same trailer, to determine who, as between these two parties, has the prior right to the title and possession of the trailer involved. The trial court held that Crestline was estopped to assert its title as against Pacific, and adjudged that as between these two parties, Pacific was entitled to the possession or the value of the trailer. From this judgment Crestline appeals.

The case was tried on a written stipulation of facts. It there appears that the parties involved are Crestline, the seller of the trailer, located in Harbor City, California; Max L. Peterson, the purchaser of the trailer, a retail trailer dealer located in Modesto, California; and Pacific, the holder of a lien on the trailer secured by a trust receipt evidencing a loan made by Pacific to Peterson on the trailer.

Peterson purchased the trailer from Crestline. On January 15, 1957, Crestline caused the trailer to be delivered to Peterson in Modesto. On that same day Peterson mailed to Crestline a check for the full purchase price of $3,604.99. This check was not deposited by Crestline because, as the stipulation of facts recites, "Peterson had advised Crestline that he would notify Crestline immediately when he had sufficient funds on deposit to pay the check. No such notice was ever given Crestline. Pacific Finance Corporation had no knowledge of this understanding." Had the check been deposited by Crestline it would have been honored on the 15th, 16th and 17th of January, and the 19th of February, 1957. A period of four months elapsed after the trailer was delivered to Peterson, and until the present dispute arose, during which time Crestline kept the check, made no claim of title to the trailer, and made no attempt to collect from Peterson.

On January 16, 1957, Peterson issued to Pacific a trust receipt covering the trailer in question. A statement of trust receipt financing had been filed by Pacific with the secretary of state on July 26, 1956, covering Pacific's operations with Peterson in Modesto. In seeking the loan from Pacific, Peterson exhibited the original invoice and shipping order for the trailer that had been executed by Crestline. The invoice is a printed form with Crestline's name and address prominently printed across the top. It shows, by proper entries

typed in by Crestline, that on January 14, 1957, Crestline sold the trailer to Peterson. Near the top of the document, after the printed word "Terms," is typed in capitals the word "CASH." The shipping order shows that the trailer was shipped to Peterson by Crestline. Stamped across the face of both the invoice and the shipping order are entries made by Peterson stating that the trailer was delivered to him on January 15, 1957, and that he paid the full purchase price of it to Crestline by a check numbered 1483 on that same day.

The invoice, at the bottom, in very small print, stated that the purchaser of the trailer "agrees that title to the trailers described hereinabove shall remain in Crestline . . . until entire purchase price has been paid." This is the provision upon which Crestline relies in support of its contention that, as against Pacific, it has title and is entitled to possession.

When Peterson, on January 16, 1957, exhibited to Pacific the invoice and shipping order, he told Pacific that he had mailed a check to Crestline on January 15, 1957, for the full purchase price of the trailer. This was the truth. He did not tell Pacific of the secret understanding that he had with Crestline to the effect that that company would not cash the check until notified by Peterson that there was money on deposit to cover it.

In the past, Pacific had engaged in trust receipt transactions on trailers with Peterson. It had no reason to distrust him. Based on the documents displayed by Peterson, and on his statements, Pacific loaned Peterson on the trailer the sum of $3,312, taking a trust receipt as security. Thereafter, periodically, Pacific inspected Peterson's premises to make certain that the trailer here involved, and others on which it held trust receipts, were in fact in Peterson's possession. On April 19, 1957, Peterson paid Pacific the sum of $331 in reduction of his obligation and pursuant to his agreement with it. On May 3, 1957, Peterson defaulted and Pacific took possession of the trailer. Peterson is no longer in business, and is unable to pay his debts. During this more than four-month period Crestline made no assertion of title, nor did it try to collect from Peterson.

The trial court held that Crestline's invoice did not give Pacific notice of the former's interest in the trailer; that Crestline, as against Pacific, was estopped to claim that it had not been paid in full; and that Pacific had a valid security interest in the trailer prior in right to that of Crestline; and

that Pacific was entitled to possession or the sum of $2,981, plus interest.

Pacific concedes that the fine print language in the invoice by which Crestline specifically retained title to the trailer until the entire purchase price was paid operated so as to create a conditional sales contract between Crestline and Peterson. This is undoubtedly correct. It is well established that the owner of personal property has the right to enter into an agreement of sale, and deliver possession of the property to the buyer upon the condition that title is to remain in the seller until the purchase price is paid. The seller's title is then superior to any interest subsequently acquired by a third person from the conditional vendee even though the subsequent buyer or lienor acquires his interest in a bona fide manner without knowledge of the original reservation of title. (*Guerin* v. *Kirst*, 33 Cal.2d 402, 409 [202 P.2d 10, 7 A.L.R.2d 922] ; *M. P. Moller, Inc.* v. *Wilson*, 8 Cal.2d 31, 34 [63 P.2d 818] ; *Oakland Bank of Sav.* v. *California Pressed Brick Co.*, 183 Cal. 295, 297 [191 P. 524], and cases cited therein; *Phelps* v. *Loupias*, 97 Cal.App.2d 350, 355-356 [217 P.2d 748] ; *Pacific Finance Corp.* v. *Hendley*, 119 Cal.App. 697, 699 [7 P.2d 391] ; *Peronnet* v. *Ralph*, 112 Cal.App. 97, 101-102 [296 P. 329] ; *California Standard Finance Corp.* v. *Riverside F. Co.*, 111 Cal.App. 151, 154 [295 P. 555] ; *Pacific Finance Corp.* v. *Hendley*, 103 Cal.App. 335, 338 [284 P. 736] ; *Bice* v. *Harold L. Arnold, Incorporated*, 75 Cal.App. 629, 634 [243 P. 468] ; *Marker* v. *Williams*, 39 Cal.App. 674, 677 [179 P. 735].)

In the absence of an estoppel, under this rule, Crestline's title would be superior to any interest of Pacific gained under the subsequent trust receipt transaction. The trial court, however, found that this rule did not apply because, under the facts, Crestline was estopped, as against Pacific, to deny that it had received full payment on January 15, 1957. This is the crucial point involved.

Crestline contends that the facts do not establish an estoppel against it. It contends that the provision in its invoice specifically reserving title until the purchase price was paid put Pacific on notice that Crestline still claimed an interest in the trailer and that Pacific should have investigated that claim.

Pacific contends that Crestline is estopped because it prepared the printed invoice containing the words "Terms:

CASH" and accepted and held Peterson's check for a period of four months without taking any action to obtain the purchase price or to assert its claim to the trailer. Pacific contends that the reservation of title, printed at the bottom of the invoice in fine type, did not give adequate notice that title remained in Crestline because the words "Terms: CASH" were typed at the top of the invoice. It contends that it could and did reasonably assume that the sale had, in fact, been for cash, that the purchase price had been paid because Peterson had already received delivery, and upon the fact that a check had been sent to Crestline for the full purchase price. It also contends that, at most, the invoice contained conflicting provisions, the interpretation of which could be decided by the trial court as a matter of fact, not law, and that there was sufficient evidence to support the trial court's finding that the invoice did not give notice of Crestline's interest.

We are of the opinion that the finding of the trial court that Crestline is estopped as against Pacific from asserting its title to the trailer is supported by the evidence. It is, of course, true that the party relying upon the doctrine of equitable estoppel must prove the existence of the four required elements essential to its application: (1) that the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. (*Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279, 368; *American Nat. Bk.* v. *A. G. Sommerville*, 191 Cal. 364, 372-373 [216 P. 376]; *General Motors Accept. Corp.* v. *Gandy*, 200 Cal. 284, 297 [253 P. 137]; *Lusitanian-American Dev. Co.* v. *Seaboard Dairy Credit Corp.*, 1 Cal.2d 121, 128 [34 P.2d 139]; *Safway Steel Products, Inc.* v. *Lefever*, 117 Cal.App.2d 489, 491 [256 P.2d 32]; *Erde* v. *City of Los Angeles*, 137 Cal.App.2d 175, 179 [289 P.2d 884]; *Benson* v. *Andrews*, 138 Cal.App.2d 123, 138 [292 P.2d 389]; *Banco Mercantil* v. *Sauls Inc.*, 140 Cal.App.2d 316, 323 [295 P.2d 55]; *Skidmore* v. *County of Solano*, 154 Cal.App.2d 449, 453 [316 P.2d 646]; *Mercantile Acceptance Corp.* v. *Liles Bros. Motor Co.*, 167 Cal.App.2d 779, 785 [334 P.2d 983]; 18 Cal.Jur.2d § 5, p. 406.) **[3]** Negligence that is careless and culpable conduct is, as a matter of law, equivalent to an intent

to deceive and will satisfy the element of fraud necessary to an estoppel. (*Parke* v. *Franciscus*, 194 Cal. 284, 297 [228 P. 435]; *Mercantile Acceptance Corp.* v. *Liles Bros. Motor Co., supra,* 167 Cal.App.2d 779, 785 [334 P.2d 983]; 19 Cal.L.Rev. 547.)

All of these elements of estoppel are present in the case at bar. Pacific relied to its detriment upon Crestline's conduct, and Crestline was culpably negligent. The invoice which Peterson gave to Pacific stated clearly that the terms for the transaction were to be "CASH." This, as it turned out, was an untrue statement. Crestline had an understanding with Peterson that it would not deposit Peterson's check until he advised it that he had sufficient funds to cover it. No time limit was established in which Peterson was required to cover the check. The transaction between Crestline and Peterson was thus virtually one of consignment rather than sale, for Crestline made no attempt to obtain payment for the trailer. It can therefore be assumed from Crestline's conduct that it intended to permit Peterson to retain possession of the trailer as if it were his own without paying for it for an indefinite period of time. Delivery and acceptance of a check in payment of a cash transaction, of course, if it does not amount to payment at least amounts to an agreement to accept the check as a promissory note in payment of the obligation. Of course, in the instant case, the check was not offered to Crestline in payment of the obligation because of the secret understanding between the parties. But to innocent third parties the transaction had the appearance of a completed transaction. This appearance was created by Crestline by its actions. Under such circumstances the maxim of jurisprudence contained in section 3543, the last section of our Civil Code, applies. That section reads: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer."

Crestline should have taken some action to publicize its title to the trailer. It could easily have typed the words "Deferred Payment" or "On Consignment" after the words "Terms" on the invoice. Had it done so Pacific would have been notified that Peterson did not have title and that Crestline did not expect to transfer title within the near future. But, since the invoice stated that the trailer was to be paid for on delivery, Pacific could reasonably assume that it had

in fact been paid for, as Peterson claimed, satisfying the condition precedent to the passage of title. Peterson had stamped the invoice "paid." He told Pacific that he had sent a check to Crestline the previous day. This was true. Had Pacific inspected Peterson's checkbook it would have found that a check had in fact been issued. Had it called Peterson's bank it would have discovered that, on the 16th of January, Peterson had sufficient funds to cover the check.

The representations made in the documents and all of the reasonably available avenues of inquiry led Pacific to believe that a bona fide payment had been made. Pacific had no knowledge of any facts which would have caused it to suspect Peterson's business integrity. It had financed numerous trailers for him, and there is no evidence that Peterson at any time attempted to "double finance" any other piece of equipment.

It must be remembered that this was a business transaction. Crestline knew or should have known that dealers frequently finance their operations by the giving of trust receipts. Knowing this, it placed in the channels of trade a document that showed on its face by words typed in by it that it had sold the trailer to Peterson for cash, which, if true, would have meant that title passed to Peterson. Now it seeks to rely on a statement printed on the document in very small print to the effect that it retained title until it was paid. Even if Pacific, in the exercise of reasonable care did read or should have read this fine print what would it have discovered? Simply that Crestline reserved title until it was paid, and the balance of the document in words typed in by Crestline indicated to a reasonable man that Crestline had been paid.

Crestline was not only negligent in placing in the channels of trade a document that could mislead persons dealing with Peterson to believe reasonably that Crestline had no interest in the trailer, but Crestline was also negligent thereafter. During the four-month period in which the trailer was displayed in Peterson's salesroom it made no attempt to obtain payment or to assert its title. It also made no attempt to ascertain whether Peterson was carrying the trailer on his books as Crestline's property, although it should have been aware of the custom of "flooring" vehicles prior to their sale. It should also have known that dealers often obtain the money to pay the manufacturer by "flooring" the vehicle. Pacific's

statement of trust receipt financing, which was on record with the secretary of state, was constructive notice that Peterson was in the habit of financing his trailers through Pacific. Yet Crestline did nothing to assert or protect its title, but permitted Peterson to keep the trailer on his floor alongside trailers which he apparently owned and on which he had executed valid trust receipts with Pacific. Meanwhile, Pacific could reasonably assume that, since the transaction was allegedly for cash, the fact that no claim was asserted by Crestline indicated that valid payment had been made by Peterson.

It was Crestline's original and subsequent acts of negligence that permitted Peterson to consummate the fraud. It typed the misleading statement concerning the terms of the transaction onto the invoice when it knew, or should have known, that this misleading provision might very well cause a finance company to advance money on the security of the trailer in the belief that the dealer had or would soon receive legal title. Hence, Crestline is responsible for the ensuing chain of events. Crestline is therefore estopped from asserting its title to the trailer. (*Cf. Mercantile Acceptance Corp.* v. *Liles Bros. Motor Co., supra,* 167 Cal.App.2d 779 [334 P.2d 983]. *Contra, Essex County Acceptance Corp.* v. *Pierce-Arrow S. Co.* (1934), 288 Mass. 270 [192 N.E. 604, 95 A.L.R. 1314].)

*Metropolitan Finance Corp.* v. *Morf,* 42 Cal.App.2d 756 [109 P.2d 969], does not require a contrary result. In that case the finance company lent money to the dealer upon his execution of trust receipts. The company did not ask for or inspect *any* document, and therefore it was not deceived by a misleading invoice prepared by the wholesalers. The wholesalers did not give the dealer a document which then led the finance company to lend money in the belief that the wholesaler had been paid. Only the finance company was negligent. Hence the wholesaler's title was correctly held to be superior to the interest of the finance company.

Crestline's other major contention is that, even if the facts would sustain a finding that it was estopped to assert its title against one who subsequently obtained some legal interest in the trailer, Pacific is not in that category. Crestline bases this contention on the argument that the transaction between Pacific and Peterson was not a valid trust receipt transaction, and created no security interest in Pacific because it did not comply with section 3014, subdivisions (a) and (b), of the

Civil Code.[1] It is urged that the transaction with Pacific did not comply with subdivision (b) because Peterson did not possess any documents of title which he exhibited to Pacific (see *In re San Clemente Electric Supply*, 101 F.Supp. 252, 255). It is urged that the transaction did not comply with subdivision (a) because that subdivision requires that the trustor possess a security interest prior to the trust receipt transaction. This last contention is directly opposed to the last portion of subdivision (a) quoted in the footnote which reads that a trust receipt transaction is one where the entruster "by the transaction acquires or (iii) as the result thereof is to acquire promptly, a security interest."

These contentions of Crestline that a valid trust receipt transaction can only be created where the trustor has secured a legal interest in the goods prior to the attempted transfer to the trustee, is also contrary to section 3014.5 of the Civil Code. This section is not found in the Uniform Trust Receipts Act. It provides: "A trust receipt transaction is also one in which, pursuant to a trust receipt, a . . . trailer . . . dealer . . . as trustee obtains new value from an entruster upon the transfer to the entruster of a security interest in new or used . . . trailers . . . whether or not such . . . trailers . . . are owned or possessed by the trustee prior or subsequent to the execution of the trust receipt document, and whether or not such . . . trailers . . . are thereafter retained in the trustee's possession."

This section specifically provides that a trust receipt transaction is "also one" in which the entruster acquires a security interest "whether or not" the dealer has title. The cases cited by Crestline which hold to the contrary arose prior to the enactment of section 3014.5, or involve goods of a kind not enumerated in that section, or arose in states which do not have a similar provision. The trust receipt transaction here involved was a valid one.

[1]Section 3014 reads, in part:
 "(1) A trust receipt transaction within the meaning of this chapter is any transaction to which an entruster and a trustee are parties . . .
 "(a) The entruster or any third person delivers to the trustee goods, documents or instruments in which the entruster (i) prior to the transaction has, or for new value (ii) by the transaction acquires or (iii) as the result thereof is to acquire promptly, a security interest; or
 "(b) The entruster gives new value in reliance upon the transfer by the trustee to such entruster of a security interest in instruments or documents which are actually exhibited to such entruster . . . but possession of which is retained by the trustee. . . ."

■ But even if title did not pass to the entruster, under section 3014.5 Crestline cannot here prevail. It has already been held that Crestline is estopped as against Pacific from claiming that it did not receive the purchase price in full. This necessarily means that Crestline is estopped from claiming that title did not pass to Pacific. It necessarily follows that the trust receipt transaction must be considered to have taken place free of any impediment to the transfer of title to Pacific for security purposes. Inasmuch as Crestline is estopped from claiming that it has title, it must follow that it is estopped from claiming that no one else could obtain at least a security title.

■ When the doctrine of estoppel is given proper application it seems clear the trust receipt transaction here involved comes directly within the language and meaning of section 3014.5. Peterson was a dealer in trailers. He received new value from Pacific upon execution of the trust receipt. Crestline, for reasons already discussed, is estopped from asserting that Pacific did not thereby obtain a security interest in the trailer. Thus, in all respects, the transaction complies with the requirements of section 3014.5. While it is true that the trust receipt transaction was not incident to the delivery of the trailer to Peterson, and thus the transaction does not comply with one provision of section 3014, that section of 3014 has been superseded by the later enactment of section 3014.5. The later section specifically permits dealers as to the goods therein specified, including trailers, to enter into trust receipt transactions as to such property already in their possession. That is this case. As between Crestline and Pacific the trust receipt transaction was valid.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., White, J., and Dooling, J., concurred.