[Civ. No. 13618. Third Dist. Dec. 3, 1973.]

PHILLIP LUPERTINO et al., Plaintiffs and Appellants, v. JOHN M. CARBAHAL et al., Defendants and Respondents.

## COUNSEL

Conrad H. Goerl for Plaintiffs and Appellants.

John A. Young for Defendants and Respondents.

## OPINION

**CARTER, J.**\*—Plaintiffs appeal from a superior court order vacating a temporary restraining order issued on April 10, 1972, and after hearing, an order denying a preliminary injunction to prevent a foreclosure sale of real property.

Two contentions are urged on appeal.

1. Defendants' fraud or mistake denied plaintiffs their right to notice of default.

2. Defendants are estopped to assert that a notice of default was mailed to plaintiffs as required by section 2924b of the Civil Code.

We conclude under the particular facts of this case that plaintiffs' second contention is meritorious and will therefore reverse and remand.

### FACTS

On September 28, 1967, the plaintiffs, Phillip and Pauline Lupertino, purchased certain real property located in Yolo County from the defend-

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

ants John and Alice Carbahal for a total purchase price of $150,000. A down payment of $43,500 was paid by the plaintiffs, with the balance evidenced by a promissory note in the sum of $106,500, payable in annual installments of $12,500 each November 1st beginning in 1968 until paid. The annual payments included interest of 6 percent per annum · on the unpaid balance. The note was secured by a first deed of trust on the subject property with Transamerica Title Insurance Company the designated trustee, and the sellers as beneficiaries. The deed of trust as executed and recorded provided that copies of notice of default and notice of sale be sent to the then address of the Lupertinos at 670 Mary Avenue, Sunnyvale, California. In 1969 the Lupertinos moved to Winters, California, but failed to file with the County Recorder of Yolo County a request for notice change of address as provided in section 2924b of the Civil Code. Plaintiffs defaulted as to the payment due on November 1, 1970. On January 11, 1971, Mr. Young, defendants' attorney, wrote plaintiffs at Route 1, Box 2, in Winters requesting payment of the delinquency, allowing 10 days for compliance, and advising plaintiffs unless the default was cured he intended to proceed with securing and processing notices of default.

Plaintiffs failed to cure the default in response to the letter and on February 10, 1971, Transamerica Title Insurance Company, as trustee, upon instructions of defendants recorded a notice of default and election to sell, and thereafter on February 12, mailed a copy of the notice of default to the plaintiffs at Route 1, Box 2, Winters, California. Plaintiffs' new address was furnished to the trustee either by the defendants or their attorney, Mr. Young.

By cover letter, the trustee advised plaintiffs they had three months from the date of recording the notice of default in which to reinstate the loan, and that if the loan were not reinstated within the three-month period, a notice of sale would be published and the property sold at public auction. In response to this notice, plaintiffs duly cured the default bringing the loan current. There is no evidence the trustee mailed a notice of default and election to sell to plaintiffs' Sunnyvale address as provided by statute.

On November 1, 1971, the Lupertinos again failed to make the annual payment when due and accordingly asked for and received a 15-day oral extension of time from defendants. Thereafter without notifying plaintiffs, the defendants paid the first installment of the 1971-1972 taxes before the due date, waited until about December 1, and then advised the trustee title company that the plaintiffs were in default and instructed the trustee to proceed with foreclosure. A notice of default and election to sell was signed by the defendants and recorded by the trustee on December 1, 1971. On

December 9, 1971, the trustee mailed a copy of the notice of default and election to sell to the plaintiffs at *670 Mary Avenue, Sunnyvale, California,* by registered mail. The registered letter containing the notice was promptly returned to the trustee, marked *"Moved, not forwardable, Moved, 5-1-69,"* (Italics added.) No copy of the notice of default was sent to plaintiffs' address in Winters, although the title officer admitted the trustee's file contained a copy of the prior notice of default and election to sell of February 10, evidencing that the same had been mailed to plaintiffs' Winters address.

There is no dispute plaintiffs were unaware their property was to be sold until early March 1972, *after* the statutory reinstatement period had expired. In this regard the trustee on March 17, 1972, mailed a registered letter with notice of sale to the plaintiffs at the *Sunnyvale address,* which was likewise promptly returned to the trustee, marked "Moved, not forwardable."

After the December 1 recordation of notice of default and election to sell, plaintiff Lupertino and defendant had several conversations. No mention was made that foreclosure proceedings had been commenced, and Lupertino was unaware that a notice of default had been recorded and unaware that the 90-day reinstatement period was running.

When plaintiffs learned that a sale of the property was pending, they immediately sought and were denied 30 days in which to cure the default. Instead, defendants did and have insisted that the reinstatement period had run, and thus they were entitled to accelerate the entire balance of $94,-440.22 and to proceed with the foreclosure sale. On April 10, 1972, plaintiffs obtained a temporary restraining order enjoining the sale, which after hearing was dissolved. The trial court stayed its order four days to afford plaintiffs the opportunity to tender the entire unpaid balance of the note. This the plaintiffs were unable to do.

Deeds of trust are creatures of statute; unless the statutes conflict with constitutional guarantees of due process, statutory procedures delineate the steps which establish jurisdiction and authority for a trustee's sale. (*McClatchey* v. *Rudd* (1966) 239 Cal.App.2d 605, 608 [48 Cal.Rptr. 783]; *Lancaster Security Inv. Corp.* v. *Kessler* (1958) 159 Cal.App.2d 649, 653 [324 P.2d 634].) A cursory review of Civil Code section 2924 evidences a periodic and genuine concern by the Legislature to improve the opportunity for a trustor in default to receive actual notice of default and notice of sale. We pointedly emphasize, however, that Civil Code sections 2924-2924h, inclusive, do not require actual receipt by a trustor of a notice of default or notice of sale. They simply mandate certain procedural

requirements reasonably calculated to inform those who may be affected by a foreclosure sale and who have requested notice in the statutory manner that a default has occurred and a foreclosure sale is imminent.

Civil Code section 2924b required that before the trustee could exercise the power of sale contained in the deed of trust before us, it was mandatory the trustee file for record in the office of the recorder of Yolo County a notice of default and election to sell in the form and manner specified in Civil Code section 2924 and within 10 days thereafter mail a copy of such notice to the plaintiffs at their Sunnyvale address. Section 2924 further provides that three months shall then elapse, after which time the mortgagee, trustee or other person authorized to make the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in section 2924f of the Civil Code. As to the default before us we are satisfied that the trustee fully complied with the procedural requirements contained in the applicable statutes. (*Lopez* v. *Bell* (1962) 207 Cal.App.2d 394, 397 [24 Cal.Rptr. 626].)

█ A trustee of a trust deed is not a trustee in the strict sense of the word. The role of such trustee is more nearly that of a common agent of the parties to the instrument. (*Pacific S. & L. Co.* v. *N. American etc. Co.* (1940) 37 Cal.App.2d 307, 310 [99 P.2d 355].) Thus a named trustee in a deed of trust, by virtue of that position alone, is ordinarily under no duty to give different or more specific notices than those prescribed by statute in order to exercise a power of sale. Numerous cases have consistently held with respect to a *notice of sale* that the only requirements of notice are those expressly prescribed by the terms of the instrument and applicable statutes. (*Lancaster Security Inv. Corp* v. *Kessler, supra,* 159 Cal.App.2d 649; *McClatchey* v. *Rudd, supra,* 239 Cal.App.2d 605; *Ley* v. *Babcock* (1931) 118 Cal.App. 525 [5 P.2d 620]; *Billings* v. *Farm Development Co.* (1925) 74 Cal.App. 254 [240 P. 298]; *Meyer* v. *Zuber* (1928) 92 Cal.App. 767 [268 P. 954]; *Sargent* v. *Shumaker* (1924) 193 Cal. 122 [223 P. 464].)

In *Lancaster, supra,* appellant urged it was entitled to specific notice under section 2924b of the Civil Code although no request for notice had been recorded. The court in rejecting such assertion stated at page 652: "This contention is untenable. The only requirements of notice of sale essential to the validity of a sale under a power contained in a deed of trust are those expressly and specifically prescribed by the terms of the instrument and by the provisions of the applicable statutes."

We think there are sound reasons for strict adherence to this concept. █ Generally, a deed of trust creates a triparte relationship between the

trustor (debtor), the trustee, and the beneficiary (creditor). Under such an arrangement the ordinary trust deed conveys the legal title to the trustee only so far as may be necessary to the execution of the trust. As pointed out in *MacLeod* v. *Moran* (1908) 153 Cal. 97, 99-100 [94 P. 604], and reaffirmed in *Bank of Italy etc. Assn.* v. *Bentley* (1933) 217 Cal. 644, 656 [20 P.2d 940]: "It carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt." As observed in *Bank of Italy, supra,* at page 655, "this state, at an early date, adopted the 'lien' theory of mortgages," and "it adopted the 'title' theory in reference to deeds of trust." Since legal title is conveyed solely for purposes of security, the trustor or his successor retains a legal estate in the property, as against all persons except the trustee and those lawfully claiming under it. (*King* v. *Gotz* (1886) 70 Cal. 236 [11 P. 656].)

This very "title concept" has made it possible with statutory safeguards to promote a maximum opportunity for real property sales, exchanges and ownership and at the same time to foster a means of optimum protection for each of the participants. We accordingly hold that the only requirements essential to a valid *notice of default and election to sell* under a deed of trust are those expressly prescribed by statute or the instrument itself. Thus under ordinary circumstances where a trustor changes his address and neglects to comply with section 2924b, he has no cause to complain if he fails to receive a duly mailed notice of default or notice of sale. Neither a trustee nor beneficiary is required to keep track of the location or residence changes of a trustor. To so hold would impose an impractical burden on the creditor-trustee and effectively impair well-established procedures for providing marketable title to real property in California, subject to deeds of trust.

Mindful of the foregoing principles, we conclude under the facts of this case the defendants and Transamerica Title Insurance Company are equitably estopped to assert compliance with sections 2924 and 2924b of the Civil Code. The Legislature, by enacting section 2924, has provided a defaulting trustor-debtor with a valuable right; namely, the opportunity to reinstate a delinquent obligation secured by a deed of trust within three months after recordation of a notice of default. In order to confer jurisdiction and authority in a trustee to conduct a foreclosure sale, if the trustor has requested that notice of default be mailed to a designated address as provided in section 2924b, then the trustee must mail a copy of the notice of default and election to sell to the person or persons at the address so designated. If such procedural requirements have *not* been complied with, a trustee named in a deed of trust has no right to represent to a de-

faulting trustor either directly or indirectly that such jurisdictional requirements have in fact been taken. Even assuming the trustee had in fact recorded and mailed the statutory notice of default and election to sell before February 10, 1971, the undisputed fact remains that the defendants through their agent, Mr. Young, instructed the trustee to give plaintiffs *actual notice* of default at plaintiffs' *Winters address* which in turn produced the initial curative response to the original default. We think this particular *actual notice of default* was crucial, as subsequent events proved. Not only did the plaintiffs respond thereto, but were entitled to and did believe that since the defendants knew of plaintiffs' actual Winters address, and the *trustee* had mailed a copy of the notice of default and election to sell to their Winters address advising that the three-month reinstatement period had commenced to run, they would be likewise so notified in the future absent some advice to the contrary.

We hold that after a *trustee* communicates with the trustor at a given address, leading the trustor to believe that his address is recognized as the receiving point of communication, the trustee cannot later refuse or fail to recognize that address. At that point the trustee ceases to act as an impartial common agent. Instead the trustee becomes the instrumentality, however innocent or negligent, of a deception which wrongfully deprives the trustor of a statutory right to reinstate the delinquent obligation.

Four elements are essential to raise an equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) The party asserting the estoppel must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. (*Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 191, 203 [65 Cal.Rptr. 287, 436 P.2d 287]; *Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal. Rptr. 661, 431 P.2d 245]; *Crestline Mobile Homes Mfg. Co.* v. *Pacific Finance Corp.* (1960) 54 Cal.2d 773, 778 [8 Cal.Rptr. 448, 356 P.2d 192].) Each element is present in the instant case.

We initially observe it was not the plaintiffs who furnished their new Winters address to the trustee in early 1971. This information was provided by the defendants through their attorney. Thus plaintiffs' *actual address* was used as the basis for actual notice of default, which in turn resulted in plaintiffs' responsive action in curing the initial default. There is no doubt defendants intended the copy of the notice of default and election to sell mailed to plaintiffs' *Winters address* to induce the curative response, which in fact occurred. There is no dispute the notice of default

and election to sell which was recorded following the November 1, 1971, default was mailed only to the *Sunnyvale* address and promptly returned to the trustee and placed in its file; that plaintiffs were unaware that a notice of default and election to sell had ever been recorded and mailed until after the three-month reinstatement period had elapsed. Finally we think there is a substantial difference in the response to be expected of a trustor in default where he knows he is in default *and the three-month reinstatement period is running,* and the situation here presented. In the former circumstance the deadline date to cure the default is known, with its consequential right of acceleration of the entire indebtedness and subsequent foreclosure sale the price of inaction.

We conclude that the conduct of the defendants, their attorney and the trustee on the occasion of the first default actually misled the plaintffs to their prejudice with respect to the second default. When a beneficiary, their agent, or trustee undertakes a course of conduct reasonably calculated to instill a sense of reliance thereon by a trustor in default, such course of conduct may not be summarily abandoned without similar notice to the trustor. Here the defendants and the trustee were chargeable with and actually knew plaintiffs' new address as evidenced by their own acts and records. When the notice of default and election to sell of December 9, 1971, and the notice of sale of March 17, 1972, were mailed and promptly returned to the trustee marked, "Moved, not forwardable," while statutorily sufficient, they were equitably inadequate under the particular facts of this case. Mailing or delivering copies thereof to plaintiffs at their known and previously used address in Winters was required.

The orders appealed from are reversed and the case is remanded for appropriate action in accordance herewith. Plaintiffs are to recover costs.

Friedman, Acting P. J., and Regan, J., concurred.

A petition for a rehearing was denied December 19, 1973, and respondents' petition for a hearing by the Supreme Court was denied January 31, 1974.