**In Re Related Asbestos Cases,**
**Richard F. GERRY.**

**In re James ADAMS, John Adams, Ray Adams, Wiley Dunn, James K. Farmer, Marshall H. Henderson, Leamon Johnson, Harry Smith, George Washington, Nolan Boudreaux, Thomas Crosby, Sigilfredo DeJesus, James Kramer, Jack Lee, Ozell Lee, Saaga Levi, James Norris, Clarence Penn, Theodis Russell, Paul Santiago, Guy Wadsworth, Elwood Wilson, Ray Wyland, Damon S. Allison, Fred Barnes, William M. Blake, Jack D. Brewer, Willie Capers, Esaw R. Darden, Ezekial Emerson, Edison H. Everett, Robert Glennon, Levi Harvey Hill, Wesbey Owens, Nicholas Prasinos, Robert Rice, Euclid Richardson, Harold Schemerhorn, Krispin C. Selim, Robert Smith, Jr., Alonzo Baton, Florida Blackmon, Eddie Eaton, Tolar Steward, Ellis Davis, Royce Littleton, Jimmy Prater, Willie Stewart and Ernest Woodson.**

Nos. C–83–6251–RCB, C–83–6260–RCB, C–83–6263–RCB, C–83–6267–RCB, C–83–6316–RCB, C–83–6330–RCB, C–83–6363–RCB, C–83–6391–RCB, C–83–6462–RCB, C–83–6483–RCB, C–87–2847–RCB, C–87–2848–RCB to C–87–2850–RCB, C–87–2852–RCB to C–87–2857–RCB, C–87–2859–RCB to C–87–2861–RCB, C–87–2863–RCB, C–87–2864–RCB, C–87–2866–RCB, C–87–2867–RCB, C–87–2875–RCB to C–87–2877–RCB, C–87–2879–RCB to C–87–2892–RCB, C–87–2894–RCB and C–87–2958–RCB to C–87–2962–RCB.

United States District Court,
N.D. California.

Sept. 25, 1987.

Richard F. Gerry, Marcia W. Hughes, Casey, Gerry, Casey, Westbrook, Reed & Hughes, San Diego, Cal., for plaintiffs.

Douglas Wah, Deborah Bogardst, Fisher & Hurst, San Francisco, Cal., for defendant Raymark Industries, Inc.

## OPINION

BELLONI, District Judge.

A court trial was held on September 4, 1987 to determine whether the plaintiffs in the above captioned cases and the defendant Raymark Industries, Inc., (Raymark) had compromised and settled all 49 cases. I heard the witnesses called by the plaintiffs and Raymark and with the consent of the parties I considered 10 affidavits [1]. I hold that the parties did enter into a contract of compromise and settlement and the plaintiffs are entitled to a judgment against Raymark [2].

## FACTUAL BACKGROUND

### A. *Settlement Negotiation Practice*

These asbestos cases were filed over eight years ago. In 1984 Chief Judge Rob-

---

[1]. I considered the following affidavits: Decl. of Douglas Garth Wah; Decl. of Thomas A. Trapani; Decl. of Frederick Schenk; Decl. and Supplemental Decl. of Richard F. Gerry; Decl. and Supplemental decl. of Marcia W. Hughes; Decl. and Supplemental decl. of Judge Peter Anello; Decl. of Julie Torres.

[2]. I rejected Raymark's argument that this proceeding must be treated as a Fed.R.Civ.P. 60(b) motion. The rule applies only to final orders. An order is final only when the court has resolved all disputed matters before it and no further action is required except the execution of the judgment. *See Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578, 584 (D.C.Cir.1980); *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.,* 773 F.2d 151, 154 (7th Cir.1985). Interlocutory orders are not within the provisions of Rule 60(b), but are left within the plenary power of the court that has rendered them to afford such relief from them as justice requires. 7 Moore's Federal Practice ¶ 60.20 (2nd Ed.1985).

Judge Peckham's prior ruling in this matter only considered issues of attorney-agency. He concluded that there was no evidence that Raymark expressly authorized Fisher & Hurst to settle the cases. *In re Asbestos Cases: Richard F. Gerry,* No. C–83–6251, order (N.D.Calif. July 22, 1986). Attorney-agency issues are not the basis upon which I am enforcing the settlement agreement. For all practical purposes, based on the new evidence and legal theories, this is an entirely new motion. Finally, it is settled law that a federal district court has inherent power to summarily enforce a settlement agreement involving a case pending before it. *In re Suchy,* 786 F.2d 900, 902–03 (9th Cir.1986).

ert F. Peckham ordered the parties to participate in a court sanctioned settlement process.

The parties, together with the special master, Judge Peter Anello, a retired judge of the Santa Clara County Superior Court, agreed upon a settlement procedure. The defendant asbestos manufacturers were to be represented by a negotiating team of about five attorneys. Plaintiffs were represented by Richard Gerry and Marcia Hughes. The parties considered fifty cases at a time and divided them into nine groups. The cases at issue here are groups 4, 5 and 6. During negotiations, the defendant's team met in one conference room and the plaintiffs' counsel met in another. Judge Anello performed a sort of shuttle diplomacy going back and forth between the two rooms with demands and counter-offers. Finally the parties would agree upon an amount.

The plaintiffs' offers were always "net" offers. In arriving at these net amounts, counsel took into consideration three factors: first, the extent that the plaintiff was injured by his exposure to asbestos, and second, the fact that Johns-Manville was a major defendant and was in bankruptcy. The offers were discounted roughly 30% to account for Johns-Manville's share. Third, the offers were discounted based on the prior settlements with other asbestos defendants. Consequently the offers were to settle for an amount that included the liability for all the participating defendants including Raymark. The defendants' offers to the plaintiffs were also net offers. The exact manner in which the defendants funded the settlement is confidential. However, Raymark's counsel Mr. Tom Trapani stated that the defendants considered, among other factors, the dust created by their products, possible defenses, exposure to punitive and compensatory damages.

The defendants wanted the amount contributed by each defendant kept secret. Therefore they would meet and agree on a total amount of settlement to be offered. The apportionment of each defendant's share was done by a member of the defend-

ants' negotiating team and then served on each defendant including Raymark. Decl. of Julie A. Torres ¶ 11; Transcript at 97 (hereinafter "Tr."). After the meetings, it was the obligation of each defendant to inform the negotiating team if they objected to the total amount or the apportionment. Decl. of Torres ¶ 12; Decl. of Judge Anello ¶ 4; Tr. at 53; Tr. at 124.

After the time for objections passed, plaintiffs' counsel would draft the releases and send them to the defendants' team which forwarded the releases to the individual defendants. Decl. of Torres ¶ 20; Tr. at 58. Raymark was named in all the releases. Tr. at 58; *See e.g.* Decl. of Marcia Hughes, Exhibit A (release of Willie Mills Sr.). After the negotiating team received the releases, payment was due.

In order to keep the amount contributed by the individual defendants secret, the participants paid their share into a trust account. Decl. of Torres ¶ 20; Tr. at 55. The defense firm administering the trust account would then send a check for a lump sum to the plaintiffs. The plaintiffs' counsel received the money piecemeal and it was impossible to tell for which individual plaintiff the money applied. If the parties could not agree to settle a case they were to request a status conference with Judge Peckham so that the case could be set for trial. The system worked very well. All the cases were eventually settled and all the participating defendants, save Raymark, have paid their portion of the negotiated amount.

B. *Raymark's Withdrawal From the Negotiations*

Plaintiffs' counsel and the defendants' team continued to negotiate and compromise cases. Groups 4, 5 and 6 were settled between March and June 1985. Raymark's counsel, Douglas Wah, a partner in the firm of Fisher & Hurst, testified that at a lunch meeting on March 7, 1985, he informed plaintiffs' counsel, and Judge Anello, that his client was withdrawing from the process. Richard Gerry, present at that meeting, testified Mr. Wah communicated his general unhappiness with the pro-

cess, but that he never informed him that Wah's client was withdrawing. Marcia Hughes, also present at the meeting, testified that Mr. Wah did not state that his client would withdraw from the process. Judge Anello's affidavit states: "At no time was I ever notified that Fisher & Hurst or Raymark were not accepting their allocations for the cases in these three groups or objecting to the judicially ordered and supervised settlement conference." Decl. of Judge Anello at ¶ 8.

Julie Torres, a member of the defendants' negotiating team, stated that: "I was never notified by Mr. Wah that Raybestos-Manhattan either disagreed with the total amount of any settlement or with its allocation." Decl. of Julie Torres at ¶ 14. Furthermore, she stated that: "I was never notified that either Fisher & Hurst, Mr. Wah, or Raymark Industries, Inc. were not participating in the settlements for Groups 4, 5 and 6. At no time was I ever notified that Fisher & Hurst, Mr. Douglas Wah or Raymark Industries, Inc. were not accepting their allocations for the cases in these three groups or that they were objecting to the ... settlement conferences." *Id.* at ¶ 18.

Mr. Wah testified that he reasserted his client's intention to withdraw on March 11, 1985 during dinner at Mr. Gerry's home. Once again Mr. Gerry and Ms. Hughes contradicted Mr. Wah's statements.

Raymark called Franklin Bondonno, who represented Owens Corning Fiberglass Corporation in the settlement negotiations, to support Raymark's claim that it withdrew from the settlement negotiations. However, Mr. Bondonno's testimony does not detract from the plaintiffs' version of the facts, and in many ways adds support. He testified that he discovered in late April or early May that Raymark considered itself to have withdrawn from the negotiations. Tr. at 81. On cross-examination he stated that he may not have learned of Raymark's intention until the third week in May. Tr. at 90. Even if he learned of Raymark's intention in the first week of May, that was *after* groups 4 and 5 were negotiated. Decl. of Frederick Schenk ¶ 6,

7 (dates groups 4 and 5 were negotiated). Consequently, Mr. Bondonno's testimony supports the plaintiffs' version because he did not know about the withdrawal until after the negotiations of groups 4 and 5 took place.

Mr. Bondonno testified that he set up a meeting with the special master to get Raymark back into the negotiations to insure that the entire process did not unravel. In covering this subject, defendant's counsel asked the following question:

Q. Was there some fear that other defendants might also leave the settlement, for example—

A. Yes.

Q. —If it became known that Raymark had left?

A. Yes. I was afraid the whole process might break down ...

Tr. at 83–84. Mr. Bondonno's answer reinforces the conclusion that none of the other participants knew that Raymark intended to withdraw.

Finally, although Mr. Wah may have communicated Raymark's intent to Mr. Bondonno, that information was never communicated to the plaintiffs. Mr. Bondonno testified that he never told the plaintiffs' counsel about the lunch with the special master. Tr. at 86.

I find that Mr. Wah never did communicate to plaintiffs' counsel, the court, or Judge Anello Raymark's alleged intention to withdraw from the settlement process. Consequently, all the parties involved in the process, except Mr. Bondonno, reasonably concluded that Raymark was participating in the settlement of groups 4 through 6.

## DISCUSSION

Many facts support both a conclusion that Raymark entered into a binding contract to settle the cases, and that it is equitably estopped from denying that it compromised the cases.

### A. *Acceptance of the Settlement Offer*

[4] Settlement agreements are contracts, and are governed by general principles of contract law. *Varwig v. Leider,*

171 Cal.App.3d 312, 217 Cal.Rptr. 208, 210 (Cal.Ct.App.1985). Consequently there must be an offer and acceptance before a valid contract is formed. The plaintiffs made offers to the defense team to settle the cases in groups 4, 5 and 6. The negotiating team tentatively accepted the offer and sent the apportionments to the various defendants' counsel. Raymark knew that the negotiating team was apportioning it a share of the settlement. Tr. at 96–97, 117.

Based on a prior course of dealing, the defendants had seven days[3] within which to reject the offer; if it was not rejected, it was deemed accepted. Decl. of Torres ¶ 12; Decl. of Judge Anello ¶ 4; Tr. at 53, Tr. at 124[4]. This manner of acceptance was mandated by the defendants. The defendants required that the apportionment process be kept secret, and that the settlement monies be paid into a central account and then forwarded to plaintiffs so that the plaintiffs would not know where the money came from. Consequently, the only way the plaintiffs could know that Raymark refused the apportionment was if Raymark objected. Raymark never did reject its apportionment of the settlements in groups 4, 5 and 6. Tr. at 97.

Silence for seven days was the defendants' manner of acceptance. This custom was established at the beginning of the settlement process, and followed in groups one through nine. Thus by its previous course of dealing, Raymark accepted the plaintiffs offer to settle the cases, when after seven days expired it did not object. Raymark did not publicly object until six months after it received the apportionment from the defense negotiating team; therefore it is deemed to have accepted[5].

### B. *Equitable Estoppel*

[5] The plaintiffs have carried their burden and have established each element of equitable estoppel[6].

### 1. RAYMARK HAD KNOWLEDGE OF THE FACTS.

Mr. Wah testified that Raymark requested that he keep it informed of the amount and the apportionment of the settlement values of groups 4, 5 and 6, and that he did keep it informed. Raymark also received, by service on Fisher & Hurst, its apportionment of cases in group 4, 5 and 6. Raymark knew that the apportionment activities of the defense subcommittee went on in secret and that payments were made in

---

**3.** By an order dated June 28, 1985, Judge Peckham increased the time to reject the proposed settlement from seven to thirty days. Decl. of Schenk ¶ 4.

**4.** For a valid contract, there must be an offer and an acceptance. "Silence in the face of an offer is not an acceptance, unless there is a relationship between the parties or a previous course of dealings pursuant to which silence would be understood as acceptance." *Southern California Acoustics Co. v. C.V. Holder, Inc.,* 71 Cal.2d 719, 79 Cal.Rptr. 319, 322, 456 P.2d 975, 978 (Cal.1969). Acceptance may be implied from conduct as well as by silence and can provide the basis upon which to enforce a settlement agreement. *Rosenberg v. Townsend, Rosenberg & Young,* 376 N.W.2d 434, 437 (Minn. Ct.App.1985).

**5.** In the two proceedings held before Judge Peckham, Raymark's defense was that Mr. Wah could not settle the cases because he lacked settlement authority. Raymark relied on *Blanton v. Womancare Inc.,* 38 Cal.3d 396, 212 Cal. Rptr. 151, 696 P.2d 645 (Cal.1985) which held that an attorney must have express authority to settle. Thus, whether Raymark communicated

its withdrawal was not relevant and no factual finding was made.

Here, the posture is quite different. Raymark gave specific authority to Wah to set up a settlement procedure. Raymark understood and accepted this procedure. No authority was cited to me that an uncommunicated wish to withdraw is a withdrawal and I believe no such authority exists.

**6.** Equitable estoppel arises from declarations or conduct of the party estopped. A party asserting equitable estoppel must prove the four required elements essential to its application. They are: "(1) that the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury." *Crestline Mobile Homes Mfg. Co. v. Pacific Finance Corp.,* 54 Cal.2d 773, 8 Cal.Rptr. 448, 452, 356 P.2d 192, 196 (Cal.1960). *See also Lix v. Edwards,* 82 Cal.App.3d 573, 147 Cal.Rptr. 294, 299 (Cal.Ct. App.1978).

lump sums, without any indication of which defendant had paid its share. Raymark knew that it had to object to its apportionment or all the participants would deem it accepted. Raymark also knew that the plaintiffs considered the settlement payments short because it was sent a letter by Mr. Gerry on July 12, 1985 asking the defendants to make timely payments with interest. Consequently Raymark knew that it was being apportioned a share of the settlement amount in groups 4, 5 and 6. It also knew that the plaintiffs considered Raymark to have settled the cases.

### 2. RAYMARK ACTED IN SUCH A MANNER THAT THE PLAINTIFFS REASONABLY BELIEVED THAT RAYMARK INTENDED ITS CONDUCT TO BE ACTED UPON.

Mr. Wah testified that Raymark never objected to the settlement amount or its allotment in groups 4, 5 and 6. Julie Torres's affidavit stated that she never was informed of Raymark's purported withdrawal from the settlement process. In fact all the declarations and testimony except that of Mr. Wah support the conclusion that Raymark never did withdraw from the settlement process. And if it had intended to withdraw, it never communicated that desire to anyone except Mr. Bondonno.

Raymark never requested a status conference with Judge Peckham to set the allegedly unsettled cases for trial. Nor did Raymark inform Judge Peckham that it objected to the court ordered settlement negotiations or that it was withdrawing. At a hearing on a motion for sanctions in June 1985, Raymark's counsel said nothing of Raymark's purported withdrawal from the settlement process. Raymark did not object when it received the July 12, 1985 letter demanding that it contribute its settlement share with interest. Raymark also paid its share of Judge Anello's special master fees for groups 4, 5 and 6.

In fact not until November 1985 did Raymark tell the plaintiffs that it had not settled the cases which were negotiated six months earlier. Any reasonable person under the circumstances would have concluded that Raymark settled groups 4, 5 and 6, because it voluntarily entered the settlement process, and never objected to the allotments it received, or publicly disassociated itself from the process. Moreover, Raymark had an independent duty to speak out if it did not want to compromise the cases. According to prior court orders it was required to request a status conference with the court so that the cases could be set for trial.

### 3. THE PARTY ASSERTING THE ESTOPPEL MUST BE IGNORANT OF THE TRUE STATE OF THE FACTS.

I have already determined that Raymark never informed the parties that it wanted to withdraw from the settlement process. Even if it had the intent to withdraw the plaintiffs were ignorant of that intent. Perhaps the strongest evidence of that ignorance is the actions that plaintiffs' counsel took.

Because the defendants' payment method was intended to keep plaintiffs' counsel ignorant of how much money came from each defendant, it was impossible to tell for which plaintiff the payment was intended. The payments were made piecemeal, and some defendants were much slower than others in making payments. Consequently, plaintiffs' counsel developed a "first settled —first out" payment system. In other words the cases settled first were paid first. Plaintiffs' counsel paid all of their clients in groups 4, 5 and 6 the total negotiated amount including Raymark's share. Counsel would never have paid Raymark's share if they had known that Raymark intended to withdraw from the settlement of groups 4, 5 and 6, because that money now comes out of the law firm's account. I conclude that even if Raymark intended to withdraw from the negotiations, plaintiffs were ignorant of that intent.

### 4. PLAINTIFFS RELIED ON RAYMARK'S CONDUCT TO THEIR INJURY.

The plaintiffs relied on Raymark's conduct to their injury. Raymark did not ob-

ject to its apportionment on groups 4, 5 and 6 until late 1985. Valuable time for discovery and preparation of the lawsuits was wasted waiting for the checks to arrive from Raymark and waiting for the current dispute over the settlement to be resolved. In addition some of the plaintiffs are now deceased and cannot personally prosecute their lawsuit. These cases are now eight years old, memories have faded, and it will be much harder for the plaintiffs to put on their proof.

## CONCLUSION

Since plaintiffs have fully performed their contracts by issuing releases to Raymark, Raymark is indebted to the 49 plaintiffs. Raymark originally owed $330,-461.00 for the 53 cases it settled in groups 4, 5 and 6. Decl. of Frederick Schenk ¶ 11. It has made payments to the plaintiffs to settle four of the original cases. Plaintiffs are awarded the total amount from groups 4, 5 and 6 minus the apportionment for the four plaintiffs that Raymark subsequently paid.