Filed 11/4/14  Morf v. MTDS, Inc. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GEORGE MORF,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>MTDS, INC.,<br><br>        Defendant and Respondent. | A140010<br><br>(Marin County<br>Super. Ct. No. 1200148) |

George Morf challenged the impending foreclosure of his home, alleging inter alia that the trustee that filed the notices of default and trustee's sale, MTDS, Inc. (MTDS),[1] lacked authority to enforce the deed of trust, committed fraud, and engaged in unfair business practices.  The court sustained MTDS's demurrer without leave to amend and awarded MTDS attorney fees under the terms of the deed of trust.  Morf appeals only from the attorney fee award, challenging MTDS's entitlement to fees.  We affirm.

## I.  BACKGROUND

In 2005 and 2006, Morf obtained a $1.2 million mortgage loan (Mortgage) from Indymac Bank, F.S.B. (Indymac), secured by a deed of trust on his home (Deed of Trust), which named Fidelity National Title as trustee.[2]  The Deed of Trust was assigned a

---

[1] MTDS, Inc. and Meridian Trust Deed Service apparently are former business names of the entity now known as Meridian Foreclosure Service.

[2] In 2007, Morf obtained a $194,000 home equity loan from Indymac, also secured by a deed of trust on his home.  In 2010, Indymac's receiver, the Federal Deposit Insurance Corporation (FDIC), transferred the 2007 deed of trust to OneWest Bank, F.S.B. (OneWest).

1

number of times between 2009 and 2011. An assignment recorded November 6, 2009 (dated Aug. 13, 2009) purported to transfer the Deed of Trust from Indymac to OneWest. Morf alleged that Indymac was no longer in existence at the time of the assignment. OneWest recorded a substitution of trustee on November 20, 2009 (dated Aug. 12, 2009) substituting MTDS as trustee. On June 17, 2011, OneWest recorded a further assignment of the Deed of Trust (dated Nov. 17, 2010) to Deutsche Bank National Trust Company, as Trustee of the IndyMac INDA Mortgage Loan Trust 2007-AR7 (Loan Trust)— apparently a securitized mortgage pool. At some point, the FDIC became receiver for IndyMac Federal Bank F.S.B. (IndyMac Federal), successor in interest to Indymac. On June 16, 2011, the FDIC as receiver for IndyMac Federal, recorded a "corrected" assignment of the Deed of Trust (dated Aug. 12, 2009) to correct the November 6, 2009 assignment from Indymac to OneWest.[3] The corrected assignment also purported to transfer beneficial interest in the Deed of Trust to the same Loan Trust.

On August 13, 2009, MTDS recorded a notice of default under the Deed of Trust. In 2011, MTDS issued a notice of trustee's sale on the property. In January 2012, Morf sued MTDS and others, seeking an injunction barring the foreclosure sale of his home, as well as damages and other remedies. Among other claims, he alleged the Deed of Trust was rendered unenforceable by securitization of his mortgage and improper assignments of his loan.

As to MTDS, Morf alleged that the November 2009 substitution of trustee was ineffective because (1) OneWest had not been validly assigned the loan at that time; (2) it was not executed by an authorized corporate representative of OneWest as required by Corporation Code section 313; and (3) the substitution of trustee was improperly notarized after the document was signed. Accordingly, Morf argued, MTDS had no authority to execute and record the notices of default or trustee's sale. Based on these allegations, he stated claims for declaratory and injunctive relief, quiet title, and cancellation of instruments. He also brought a claim for fraud, alleging MTDS

---

[3] Recording was requested by the OneWest foreclosure department.

suppressed files related to his loan and misrepresented the date of the foreclosure sale to gain an advantage over Morf and cause him to go further into default. Finally, he claimed MTDS's conduct was part of a pattern of unfair business practices.

MTDS demurred to the complaint. MTDS asserted that a new substitution of trustee had been recorded on March 22, 2012, mooting Morf's contentions regarding the November 2009 substitution. MTDS further argued that, even if it had not yet been properly substituted as trustee when it recorded the notice of default, it was authorized by statute to record that notice as an agent of the Deed of Trust beneficiary. (See also Civ. Code, § 2924, subd. (a)(1), (6).)[4] The same statute shielded it from liability for wrongful foreclosure. (See § 2924, subd. (b).)[5] In opposition, Morf continued to argue irregularities in the substitution of trustee, and he contended that MTDS could be held liable for attempting to foreclose on his property without clarifying the chain of title to the property.

The trial court sustained the demurrer in part with leave to amend. On the same date, Morf's request for a preliminary injunction to stop the foreclosure was denied because "Defendants' evidence shows that [the Loan Trust] is the holder of [Morf's] loan and has standing to foreclose." The court was later informed that Morf's property was sold at a trustee's sale in September 2012.[6]

On October 1, 2012, Morf filed a first amended complaint. MTDS again demurred. The court sustained the demurrer without leave to amend, finding that Morf had not alleged sufficient prejudice, as it was undisputed he was in default on his loan at

---

[4] Undesignated statutory references are to the Civil Code.

[5] MTDS noted that it had filed a "Notice of Declaration of Nonmonetary Interest" pursuant to section 2924*l*, agreeing to be bound by the court's nonmonetary orders, but Morf had objected to that notice.

[6] On October 2, 2014, MTDS asked us to take judicial notice of a "Trustee's Deed Upon Sale," which was recorded on September 24, 2012. We ordinarily do not consider evidence that was not before the trial court when it made the order we are reviewing on appeal. (*In re Zeth S*. (2003) 31 Cal.4th 396, 405.) We find no reason to do so in this case, and the request for judicial notice is denied.

3

the time the notice was recorded and the property was sold.  The court entered judgment for MTDS, and Morf did not appeal.[7]

MTDS then moved for an award of attorney fees under a fee-shifting provision of the Deed of Trust and section 1717.  The Deed of Trust included the following relevant provisions.

"**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument . . . , then Lender may do and pay for whatever is reasonable and appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Lender's actions can include, but are not limited to: . . . (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument . . . . [¶] Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment. [¶] . . . [¶]

"**22.  Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. [¶] If Lender invokes the

---

[7] The case continued against other defendants, including OneWest.

power of sale, Lender shall [record a notice of default and sell the property at a public auction]." (Boldface after section title omitted.)

MTDS argued that, pursuant to section 1717, the Deed of Trust provisions giving the Lender a right to recover attorney fees "apply equally to *all* parties to [the] contract." In opposition, Morf argued MTDS had not established that it was the trustee under the Deed of Trust or that Morf could have recovered attorney fees if he had prevailed against MTDS, thus allowing MTDS to recover under the mutuality principle of section 1717. The court granted the motion, awarding fees in the amount of $9,825.00: "[T]he language in the Deed of Trust . . . authorizes the prevailing party to recover its attorney's fees in any action challenging the authority and the rights of the Trustee under that Deed of Trust constitutes [*sic*] an 'action on the contract' within the meaning of . . . [section] 1717. (See *Valley Bible Center v. Western Title Ins. Co.* (1983) 138 Cal.App.3d 931, 932–933.)"

## II. DISCUSSION

On appeal, Morf challenges MTDS's entitlement to attorney fees. He does not separately contest the reasonableness of the amount of fees awarded.

A. *The Deed of Trust Fee Provision and Section 1717*

In *Valley Bible Center v. Western Title Ins. Co., supra*, the case cited by the trial court, the Deed of Trust required the borrower to pay the costs of any action in which the lender *or trustee* appeared to defend its rights under the deed or protect the security of the deed. (138 Cal.App.3d at p. 932 [" 'Trustor agrees: . . . to pay all costs and expenses . . . in any such action or proceeding in which Beneficiary or Trustee may appear' "].) Here, as Morf correctly notes, the Deed of Trust only expressly authorizes "the Lender" to appear and incur costs in such actions, and it requires the borrower to reimburse only those costs (i.e., the lender's costs). Morf argues that section 1717 therefore authorizes a reciprocal award of fees only against the lender, not against the borrower.

Section 1717, subdivision (a) provides in relevant part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the

5

prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

"The deed of trust is an agreement between three parties, to wit, a trustor (usually the debtor), the trustee (a neutral party), and the beneficiary (usually a creditor) (*Lupertino v. Carbahal* [(1973)] 35 Cal.App.3d 742, 747–748)." (*Huckell v. Matranga* (1979) 99 Cal.App.3d 471, 481; see also *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 518; *Aviel v. Ng* (2008) 161 Cal.App.4th 809, 816.) While the trustee ordinarily does not sign the deed of trust or expressly consent to being a party to the deed of trust (4 Miller & Starr, Cal. Real Estate (3d ed. 2013) § 10:4, pp. 10-30 to 10-31), "[i]t is hornbook law a person who holds himself out as offering a service cannot complain if in reliance thereon another accepts the offer and agrees to the terms. Such a person becomes a party without being a signator." (*Huckell v. Matranga*, at p. 481.) Thus, the trustee is a party to the deed of trust.

Because the Deed of Trust here "specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to [the Lender], then the party who is determined to be the party prevailing on the contract, whether he or she is [the Lender] or not, shall be entitled to reasonable attorney's fees in addition to other costs." (§ 1717.) MTDS was the prevailing party on Morf's claims against it for declaratory and injunctive relief, which claims were based on the Deed of Trust. (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347–348.) Thus, MTDS was entitled to its attorney fees. (See *Huckell v. Matranga, supra,* 99 Cal.App.3d at pp. 481–482 [combined note and deed of trust, which gave lender right to attorney fees, would have given trustor right to fees against trustee had trustor prevailed against trustee, but trustor only prevailed against lender/beneficiary].) While other causes of action Morf pursued against MTDS may not have been "on the contract," Morf does not argue on appeal that MTDS's attorney fees were not properly allocated between contract and noncontract causes of action. Any such argument, therefore, is forfeited. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785.)

6

*Leach v. Home Savings & Loan Assn.* (1986) 185 Cal.App.3d 1295, cited by Morf, is distinguishable.  The plaintiff, Leach, filed a quiet title action challenging the validity of various deeds of trust signed by the trustee of property that was held in a testamentary trust.  The defendants prevailed and sought fees under the terms of the deeds of trust.  (*Id.* at pp. 1298–1301.)  Because Leach had not executed any of the deeds of trust, however, she could not have recovered fees had she prevailed.  Therefore, the defendants had no reciprocal right to fees under section 1717.  (*Id.* at pp. 1304–1307.)  Unlike Morf, Leach was not part of the "tri-partite" deed of trust relationship.

B.     *Other Arguments*

Morf argues that MTDS was not entitled to attorney fees under the Deed of Trust fee provision because the November 2009 substitution of trustee was ineffective, as OneWest was not the present beneficiary at that time.  This argument is forfeited because Morf supports the argument with neither citations to the record nor with an adequate record.  (See *Guthrey v. California* (1998) 63 Cal.App.4th 1108, 1115 [appellate court may treat as forfeited any factual contentions not supported by a citation to the record]; *Rancho Santa Fe Assn. v. Dolan-King* (2004) 115 Cal.App.4th 28, 46 ["[w]here the party fails to furnish an adequate record of the challenged proceedings, his claim on appeal must be resolved against him"].)  Rather than provide citations for the specific factual representations he makes in his opening brief (see Cal. Rules of Court, rule 8.204(a)(1)(C)), Morf purports to cite large segments of the record in support of his statement of facts in a footnote in his brief, and citations in that footnote do not correspond to the clerk's transcript on appeal.

Finally, Morf argues that the Deed of Trust authorizes recovery of attorney fees only by means of adding the fees to the secured debt and collecting on that debt through a trustee's sale.  This argument was not raised in the trial court is also consequently forfeited.  (See *Ward v. Taggart* (1959) 51 Cal.2d 736, 742.)

### III.     DISPOSITION

The attorney fee order is affirmed.  Morf shall bear MTDS's costs on appeal.

7

_____

BRUINIERS, J.


WE CONCUR:


_____

SIMONS, Acting P. J.


_____

NEEDHAM, J.

8